# Staunton

## NEAL WALTERS V. COMMONWEALTH.

September 22, 1932.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*Thomas F. Walker,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

The accused, Neal Walters, was indicted jointly with Crigger, Hagee and Jones for breaking and entering a certain smokehouse of one Shannahan and stealing therefrom sixteen pieces of meat of the value of $100. He was found guilty by the jury, and his punishment fixed at confinement in the penitentiary for fifteen months. Judgment was entered on the verdict carrying it into effect.

The indictment was drawn under section 4439 of the Code, and contained only one count. It charged housebreaking and larceny. The verdict was a general one finding the accused "guilty." It did not specify whether he was found guilty of housebreaking or larceny.

It will be considered as a finding of guilty of house-
breaking, the major offense, for it is well settled in Vir-
ginia that when an indictment contains but one count,
charging housebreaking and larceny, and the verdict is
a general one of guilty, the verdict will be considered as
one for the major offense of housebreaking. *Speers' Case,*
17 Gratt. (58 Va.) 574; *Vaughan's Case,* 17 Gratt. (58 Va.)
576; *Myers* v. *Com.,* 132 Va. 746, 111 S. E. 463.

The accused having been convicted of housebreaking,
contends that the evidence is insufficient to sustain the
conviction. There are many other points raised by him
but the decision of this case rests upon the sufficiency of
the evidence and inasmuch as the verdict is not supported
by the evidence the other questions raised become im-
material.

█ The evidence, briefly stated, discloses that on
Monday, May 11, 1930, a smokehouse, belonging to one
Shannahan, located in Wythe county, was broken into
and sixteen pieces of meat stolen therefrom. It is not
shown whether the breaking occurred in the day time, or
night time. A substantial portion of the meat was found
in the city of Roanoke and recovered. Hagee and Crig-
ger, who were jointly indicted with the accused, and
who admitted their guilt, carried the meat from Wythe
county to Roanoke and disposed of it on Wednesday
morning, May 13. The accused, at the invitation of
Hagee and Crigger, rode from his home in Wythe county,
with them to Roanoke in an automobile driven by Hagee.
The evidence discloses that not until their arrival in
Roanoke did the accused know that the meat was in the
automobile and when he was informed of that fact, he
immediately inquired of Hagee and Crigger where they
obtained the meat and they told him they had obtained
it from Hagee's home, whereupon the accused assisted
them in disposing of it to one Dunford, a restaurant keep-
er, and one Saunders, a butcher. The money paid for
the meat was received by Hagee and Crigger. The ac-

cused received no part of it. Hagee and Crigger testified in his behalf. They said that he knew nothing about the breaking into the smokehouse and the theft of the meat. On cross-examination they stated that he and they were at the home of one Jones on Monday night, May 11th, and there it was discussed with Allen and Pack that they steal some chickens or Shannahan's meat, but this discussion took place out of the presence of the accused and he did not hear it. On the following Friday or Saturday after he returned to his home, he was informed that Shannahan's smokehouse had been broken into and the meat stolen. He immediately told Shannahan and the sheriff of the county that he was present when certain meat was disposed of by Hagee and Crigger to Dunford and Saunders in Roanoke, whereupon a warrant was issued for the arrest of Hagee, Crigger and the accused. Shannahan and the sheriff both corroborate the statement of the accused that he reported to them the disposition of the meat in Roanoke. To summarize briefly, the evidence discloses the breaking and entering of the smokehouse and the theft of the meat, and that the accused, two days later, assisting in the sale of the meat in Roanoke. It also discloses the presence of the accused at Jones' house on Monday night, when it was suggested by Hagee and Crigger, out of his presence, that they steal the meat. This evidence is not sufficient to sustain a verdict of conviction of housebreaking, against the accused. This conclusion is strongly fortified, not only by the weakness and insufficiency of the evidence for the Commonwealth, but by the uncontradicted testimony that the accused received no part of the money obtained for the meat and had no knowledge that the meat was in the automobile until he arrived in Roanoke and immediately upon being notified of the theft of the meat he reported to the sheriff and Shannahan that the meat had been sold in Roanoke by Hagee and Crigger.

The presumption, arising in certain cases from

the unexplained exclusive possession of recently stolen goods, that the possessor is the thief, has no application here, because it was not shown that the accused was in possession of the meat, and even if he had been in possession, it alone, without other inculpatory circumstances, would create no presumption that he was the housebreaker. In Virginia it is well settled that the possession of stolen goods is, of itself, not even *prima facie* evidence of housebreaking or burglary. *Tyler's Case,* 120 Va. 870, 91 S. E. 171, 172. If it be considered that the accused was in possession of the meat, there is no evidence in the case of any "inculpatory circumstances" or of any guilty knowledge. On the other hand, there is uncontroverted evidence that he told the sheriff and Shannahan what he knew about the disposition of the meat immediately after he learned of the theft. This conduct is consistent, only with his innocence. It is certainly inconsistent with his guilt.

The verdict of a jury, approved by the judgment of the trial court, is accorded great respect by this court, but the fundamental principle that it is the duty of the Commonwealth to prove beyond a reasonable doubt, the guilt of an accused, by competent evidence, is essential to every conviction. The failure of the Commonwealth to prove the guilt of the accused renders it necessary to set aside the verdict of the jury, reverse the judgment of the trial court and to remand the case with the direction that the indictment against the accused be dismissed.

*Reversed.*