# 𝔖taunton

MORGAN SUTHERLAND V. COMMONWEALTH OF VIRGINIA.

September 9, 1938.

Present, All the Justices.

488

The opinion states the case.

*S. H. & Geo. C. Sutherland,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Joseph L. Kelly, Jr., Assistant Attorney-General,* for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

Upon a warrant issued on August 7, 1937, by the trial justice of Dickenson county, Morgan Sutherland was charged with having "in his possession about five pints of illegal whisky." On appeal to the circuit court of that county from a conviction by the trial justice, he was found guilty and a fine assessed against him. The trial judge, in entering judgment on the verdict of the jury, added a further provision requiring the defendant to execute a bond with approved security in the penalty of $1,000, conditioned that the said defendant should not violate any of the provisions of the Alcoholic Beverage Control Act for the period of one year. Virginia Code 1936, section 4675 (1) *et seq.*

The material facts in the certified evidence show, without any substantial conflict, the following case:

Morgan Sutherland, with his wife and two grown sons, lived in a combination dwelling house and restaurant, situated on a hillside, on a narrow strip of land about 200 feet wide, between the State highway and McClure creek, in Dickenson county. The river, from bank to bank, is about 110 feet wide, and at the time in question, it was so dry that it could be easily crossed on dry rocks. On its opposite side was a tramroad or "dinkey" railroad used by a lumber

company. There was no enclosure around the house, nor down the stream therefrom for several hundred yards to a neighbor's house. The land surrounding the place where the defendant lived was grown up with wild weeds for a distance of 300 yards toward and along the river bank.

Three or four officers came to the premises where the defendant lived, and searched those premises and the adjoining premises for illegal ardent spirits. One of the officers found five pints of illegal whisky on the bank of the river, a short distance below a toilet. From the toilet, tracks led to the defendant's home and to the edge of the highway. The positive evidence shows that the place where this liquor was found was more than 125 feet from the lot occupied by Sutherland and his family. None of the officers knew who owned, occupied, or controlled the land upon which this liquor was found.

Another officer who searched the house, upstairs and down, found in a box of old bedding, in a room on the upper floor, "a pint bottle with about a gill of moonshine or untaxed liquor." There was no one in the room when this was found, but in the next room, the living room, the defendant and two other men were found. The door was closed between the two rooms. In a room next to the latter room, which was used as a restaurant and for the sale of soft drinks, were found the defendant's wife and several other persons.

Sutherland testified that he knew nothing of the liquor found by either officer; that the place where he was shown the five pints were found, was more than 125 feet from the lot where he lived; that he did not know who owned the land where this liquor was found, nor have any control over it, nor any of the adjoining premises; that he did not own, or know anything of the gill of liquor found in the dwelling house; and that the two men present in the living room with him were his half-brothers, who had come in there eight or ten minutes before the officers came, both of whom acted like they had taken a drink or two of liquor.

Sutherland further offered to testify that the place where he lived was not owned by him, but leased by his wife, who ran the house and the restaurant, while he worked in a sawmill some distance away, where until a few weeks before, he had been employed for about twelve years. The court refused, over the objection of the defendant, to permit this testimony to go before the jury.

Another witness testified that he knew the place where the smaller amount of whisky was found and knew who put it there. The trial court refused to permit him to testify that the defendant knew nothing about it being placed there.

During the trial, and at the close of the Commonwealth's evidence, the defendant moved the court to require the Commonwealth to elect which one of the quantities of liquor found it would rely on for a conviction. To the action of the court in overruling the motion, defendant excepted.

There are numerous assignments of errors, both to the giving and refusing of instructions and to the exclusion of evidence.

The principal assignment is that the court refused to set aside the verdict as contrary to the law and the evidence, and without evidence to support it. We will first consider this assignment since it not only goes to the merits of the case, but covers a number of the alleged errors.

It is contended by the Commonwealth, in the brief of the Attorney General, that, independently of statute, there is a presumption that the person occupying or in control of premises is in possession of illegal liquor found on such premises. Such a presumption is relied on in this case to establish the fact that the whisky in question was in the possession of the defendant.

In Virginia, prior to 1934, under laws regulating the liquor traffic, there were successive statutes which provided that the finding of ardent spirits on premises should be *prima facie* evidence of a violation of the prohibition law by the occupant or the person in control thereof. The presumption thus created, unless rebutted, was sufficient to sustain a conviction. The final evolution of such provisions

in the former statutes relating to possession, is found in Virginia Code 1930, section 4675 (12) and 4675 (108).

However, in the enactment of the Alcoholic Beverage Control Act, hereinafter referred to as the A. B. C. Act, by the General Assembly of Virginia in 1934 (Code 1936, section 4675 (1) *et seq.*, Acts 1934, p. 100, c. 94), former section 4675 (1) *et seq.* of the Code 1930, was repealed. Prior statutes relating to the same subject had already been formerly repealed or superseded by the provisions of the last mentioned statute.

In the last and present Act, the provisions in the former Act, making the finding of ardent spirits *prima facie* evidence of unlawful possession by the person or persons occupying the premises where found, were omitted. Nor do any present statutes contain a provision making the finding of illegal liquor *prima facie* evidence of possession. The A. B. C. Act was framed after most careful thought and consideration by some of the ablest minds in this State, and enacted by the General Assembly, in view of considerable experience, in an attempt to enforce and regulate the liquor traffic. The omission, therefore, of any reference to the former provisions making the finding of ardent spirits *prima facie* evidence of unlawful possession by the person occupying the premises where found, is highly significant. The *prima facie* presumption of guilt as to unlawful possession, under the named circumstances, was wiped out in the enactment of the A. B. C. Act.

By Virginia Code 1936, section 4675 (50), it is provided that, "If any person, * * * shall have, possess, keep, * * * alcoholic beverages which shall have been illegally acquired by such person or any person for whom he is acting, he shall be guilty of a misdemeanor." It then provides that "Spirits in the possession of any person and in containers not bearing the required Government stamp or seal shall be deemed *prima facie* evidence that such spirits were illegally acquired."

This section first makes it unlawful to possess spirits, which have been illegally acquired. It does not pro-

vide that the finding of spirits, legal or illegal, on any premises, shall create *prima facie* evidence that they are in the possession of any specified person or persons. It next provides that spirits in the possession of any person, without a legal stamp or seal thereon, shall be deemed *prima facie* evidence of the illegal acquisition thereof. The fact of possession is a fact to be proved. It is not presumed. To establish a *prima facie* presumption of illegal acquisition, two facts must be proved, both the fact of possession and the further fact that the spirits have not legal stamps or seals thereon. This presumption is applicable when illegal spirits are found on the person, or the fact of possession thereof is admitted or proved.

Some States, especially in view of the liberal construction required of their statutory provisions regulating the liquor traffic, have applied the principle contended for here, in derogation of the strict rules of the common law, generally applicable in the enforcement of the criminal law.

Cases from other States and those decided under the former statutes of this State, relating to the prohibition law, upon the subject of possession, are of little value in view of the present statute and of the principles governing the trial of criminal cases in this State. The mere ownership or control of premises where illegal liquor is found is no longer required by law to be deemed *prima facie* evidence of the possession thereof by the owner or one in control of the land.

As said by Mr. Justice Epps, in *Spratley* v. *Commonwealth* (1930), 154 Va. 854, 152 S. E. 362, 364, "Except so far as modified by statute the rules of law and evidence are the same in prosecutions for violation of statutes prohibiting the manufacture, possession * * * of intoxicating liquors as prosecution for other crimes."

In that case, it was held that the mere presence of a person in an automobile in which intoxicating liquor, not shown to be on his person or under his control, was being transported, was not alone sufficient to sustain a conviction of such person upon the charge of transporting liquor, or

aiding in the transportation thereof, in the absence of a statute making his presence *prima facie* evidence of such guilt. The relevancy of the rules and principles therein expressed is peculiarly applicable to the question under review here.

It is elementary in this State, except as modified by statute, that the accused, in a criminal case, is presumed to be innocent until his guilt has been proven beyond a reasonable doubt. The burden of proof of guilt is upon the Commonwealth. This burden continues throughout 'the trial and never shifts. The presumption of innocence is so strong that not only is the accused entitled to the benefit of it, but if the case be a doubtful one, the presumption is sufficient to turn the scale in his favor. It has been repeatedly held that it is not sufficient that the evidence creates a suspicion or probability of guilt; but it must go further and exclude every reasonable hypothesis except that of guilt. Nor, where a fact is equally susceptible of two interpretations, one of which is consistent with the interpretation of the accused, may the jury arbitrarily adopt that interpretation which incriminates him. The failure of the Commonwealth to point out, or the defendant to name the guilty party, is not allowed to prejudice the presumption of innocence in favor of the defendant. *Dixon* v. *Commonwealth,* 162 Va. 798, 173 S. E. 521; *Triplett* v. *Commonwealth,* 141 Va. 577, 127 S. E. 486; *Spratley* v. *Commonwealth, supra.*

The presence of liquor upon the premises of the owner or occupant is not sufficient, in the absence of statute, to overcome the presumption of innocence. Its presence does not measure up to a standard of presumptive evidence of guilt. It is merely evidence of a circumstance tending to show guilt, and it is to be considered by the jury and given such weight as they may deem proper in connection with other pertinent and material facts and circumstances in the case. It may bear a natural relation to the fact that the owner or occupant of the land had knowledge of its existence; but it is only an evidential fact and not a *prima*

*facie* presumption. The possession contemplated by the statute as a crime is a guilty possession. He must have a connection with the ownership.

Supporting the contention of the Commonwealth, the trial court, over the objection of the defendant, gave the following oral instruction: "In this country a man is presumed to be the head of the family and is, or at least should control the home and place where they live."

In theory, in Virginia, the husband is the head of the family, and is the director of its domestic affairs; but, in fact, the contrary is often true. The theory may be rebutted and the fact shown.

A consideration of the subject of the respective leadership and control in the family might prove interesting; but it is not necessary to a decision of the case. Suffice it to say that, in Virginia, the married woman, by the exercise of her natural talents and an insistence upon her rights, has secured, in public opinion and by the enactment of statutes, a recognition that she has property, contractual and civil rights, equal to those of her husband. She has, in a large measure, secured an emancipation from the legal bondage of the common law in relation to her domestic and marital relations. *Commonwealth* v. *Rutherfoord,* 160 Va. 524, 169 S. E. 909, 90 A. L. R. 348.

The giving of the above instruction, under the circumstances of this case, was, therefore misleading and improper.

It was also error to refuse to permit the defendant to testify that he did not own, or control the premises, both because he could rebut the presumption if it existed, and because he was entitled to show how little the circumstance of the presence of the liquor on the premises related to his possession thereof.

It is unnecessary to take up in detail other assignments of errors with reference to the giving and refusing of certain instructions. What we have said herein discloses our view upon that subject.

The defendant complains of the action of the trial court in refusing to require the Commonwealth to elect as

to which quantity of liquor found it would rely on for a conviction. The answer to this is that there is only one charge in the warrant, and only one offense alleged against the law. The charge was for the possession of the whole quantity at the same time. Each quantity was but a part of the sole crime charged. The two quantities did not constitute separate offenses. The objection is not well taken.

If the defendant desired to ascertain what the Commonwealth relied upon, he should have requested a bill of particulars. Proper instructions to the jury could have also covered the situation relative to the finding of separate parcels of liquor at the several places.

The final assignment of error relates to the action of the trial court in requiring a peace bond from the defendant, and in refusing to suspend its requirements pending the petition for a writ of error.

Virginia Code 1936, section 4675 (62), specifically authorizes the trial court to require the giving of a peace bond upon conviction of a violation of the A. B. C. Act. This section was doubtless placed in the statutes by the law-making body in view of the difficulties surrounding the regulation of the liquor traffic. The exercise of the authority to impose the peace bond is left to the sound judicial discretion of the trial judge, and is only conditioned upon there being a conviction. When imposed, it becomes a part of the judgment of the trial court. An appeal from the judgment is an appeal from the whole of the judgment, that portion finding the defendant guilty as well as that portion imposing the peace bond. There exists the same right to a suspension of the imposition of the peace bond as exists to any other part of the judgment. Virginia Code 1936, section 4930, provides that the trial court may suspend the execution of the sentence, or let the accused out on bail. The accused was entitled to a suspension of the execution of the whole judgment and to bail, pending the application for a writ of error, and pending the judgment of this court after the writ of error was granted.

 The effect of a final judgment reversing the judgment of the trial court in such a case is to vacate and annul the peace bond required to be given in the judgment of the trial court. After an acquittal, or a final conclusion of the case favorable to the accused, no peace bond may be required under the section in question.

In a consideration of the facts, we find no evidence sufficient to connect the defendant with either the knowledge or possession of the five pints of whisky found on the river bank, and without the confines of the premises occupied by him and his family. Even under the former prohibition laws, the finding of such liquor created no *prima facie* evidence of possession by him.

The finding of the gill of whisky, in a box of old bedclothing, in a room in the house where he lived with his wife and two grown sons, where other relatives of the family had access, under the conditions related herein, is unrelated to any evidence whatever that the defendant had any knowledge or connection therewith. On the other hand, there is positive evidence that he knew nothing of it. Such evidence, under the circumstances, is neither unreasonable nor improbable, nor is it in any manner impeached. Being uncontradicted and supported by other evidence and the surrounding circumstances, it is entitled to consideration.

While one might reasonably infer that the occupant of a house, having free range therein, could observe the presence of a large object, such as a piano, ice-box, or coal stove, in an open place in one of the rooms, it is not so reasonable to infer that he should have knowledge of the presence of the many smaller objects of personal property, which usually belong to other members of the household, such as books, bottles of perfume, letter boxes, etc., especially if such articles be hidden from view. So, in this case, the size of the liquor container found in the house, the place and manner of its secretion, and the surrounding circumstances, create no reasonable inference of the knowledge by the defendant of its presence.

The evidence certified in this case wholly fails to show that the defendant owned or possessed any of the whisky found, or even had knowledge of its presence.

The judgment of the trial court is reversed, the verdict of the jury set aside, and the Commonwealth having apparently fully developed its evidence, the case is remanded to the trial court, with the direction to dismiss the accused from further prosecution under the charge in the warrant.

*Reversed and remanded.*