# Wythebille

ROBERT CHARLES V. COMMONWEALTH OF VIRGINIA.

June 6, 1945.

Record No. 2988.

Present, Campbell, C. J., and Holt, Hudgins, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*J. Brooks Mapp*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *V. P. Randolph, Jr., Assistant Attorney General*, for the Commonwealth.

BROWNING, J., delivered the opinion of the court.

Robert Charles was convicted in the trial justice's court of the county of Accomack of having unlawfully had in his possession, on August 28, 1944, alcoholic beverages after having been interdicted under the provisions of section 4675(35a), of the Virginia Alcoholic Beverage Control Act. He appealed from this conviction and was tried in the circuit court by a jury, was convicted and assessed with a fine of $200 and was again interdicted. He is now before this court upon a writ of error which presents the sole question of the sufficiency of the evidence to sustain the conviction.

At the outset, let us note that it was in evidence that on three previous occasions he was charged with violation of the liquor laws, under the following circumstances:

In 1940, in Northampton County, he was convicted of unlawfully manufacturing whiskey and served a term therefor in the state penitentiary.

In 1943, he plead guilty to a charge of violating the law and was fined and served a jail sentence. In March 1944 he was acquitted of a charge of having in his possession alcoholic beverages after having been interdicted.

This, of course, is a sordid record but every case is heard and determined upon its own merits. These are the facts of the present case:

The accused conducts a grocery store and restaurant in the village of Keller. He sells soft drinks too and this business is done in the front part of his store building. In the rear is his kitchen where he does the cooking.

On the night of August 20, 1944, he had two persons helping. him,—a girl who carried the meals from the kitchen to the customer and a boy who sold and served soft drinks. It was after midnight when four officers of the law went to Charles' place with a warrant and searched the premises. They found no alcoholic beverages or empty bottles in the building where his business was conducted. The building is about 20 feet from the main road in the colored section of the village. It is 66 feet long and 30 feet wide. In the immediate neighborhood or section fifteen or twenty colored families live. The accused and his helpers and customers are colored people. On this Saturday night there was a large crowd at the place. One of the officers, Mr. Nicolls, said there were 50 or more people on the outside and Mr. Finney said there were 25 or 30 inside the building. About 100 yards away there is a dance hall and restaurant which is operated by Lena and Otho Sturgis. At the rear of the Charles building, some twelve or fifteen feet from it, is a chicken yard, which belongs to the accused. It is enclosed by a high wire fence. In this fence are two openings. One is a place of exit to the hog pen of the accused and the other is where there was a gate which was partially closed by boards nailed at the bottom to prevent the escape of the chickens. On the outside of this enclosure the officers found a tub or half barrel containing eleven bottles of beer and some ice and on one side of the barrel was a bag with a piece of ice in it and on the other were two empty beer cases. A pop bottle of what was called "bootleg liquor" was found on the ground, the neck of which extended underneath the chicken yard wire. The chicken yard was in the possession of the accused and it appears that the ground where the tub with the beer sat was a part of the premises occupied by him. It was testified that the tub was in a clump of very high weeds which had not been trampled and that one could not approach the tub without disturbing the weeds, but that one could reach through the opening from the chicken yard and get the beer. Around the tub the ground was not wet or damp, but there were some

tracks. The presence of water would, of course, have indicated that it was spilled when bottles of beer were taken out. There was no lock on the gate of the chicken yard. It was open and accessible to any one.

In the space between the building of the accused and that of Lena Sturgis is a watermelon patch belonging to the accused. He missed some of his melons and he charged the son of Lena with being the culprit. She went to Charles' place and berated him about it and said she would "put the law on him". A short time before that, April 1944, she had been in the clutches of the law for liquor violations.

The Commonwealth undertook to prove that there were no paths leading to the tub of beer from outside the chicken enclosure but there was credible evidence that there was a traveled path leading that way and past it from a near-by piece of woods.

About 20 yards from the establishment of the accused is a building which is occupied by a woman named Fairy Garrison. It is hinted that there existed sentimental relations between them. We think this is not at all material. In that building there were found three cases of legal beer. The woman rented the place herself and the accused's uncontradicted testimony was that he had not been in the building for more than a month.

The officers laid no charge to the accused on account of this. It might be said to indicate that liquor of one sort or another could be found almost anywhere in that vicinity but whose it was and what was its source would be highly speculative.

It is significant that of the large number of people assembled there on that night, only a boy was arrested by the officers for drunkenness or disturbance of the peace.

It must also be noted that the search of the officers was made in the night by the light of a flash light. The effect of this would to some extent impair the efficiency of the search and strengthen the testimony of the accused as to the existence of a path leading from the outside of the en-

closure to a piece of woods close by which was used by fifteen or twenty people who come up through the woods to buy groceries. This is corroborated by the testimony of officer Warner Davis, who said that he and Mr. Kellam "followed a path down in some bushes" which was outside the chicken house and led finally to the woods.

It is also worthy of mention that Lena Sturgis was a rival restaurateur; that her place of business was hard by; that she had numerous customers at late hours of the night; that she kept open house later than did the accused; that she had ill feeling toward him, which found expression in the threat that she would "put the law on him", induced by the watermelon episode.

All this brings us to the conclusion that the evidence is insufficient to bring the case within the precise and narrow requirements of the law which have been so frequently expressed by this court.

The burden is upon the Commonwealth to prove the case. It is not incumbent upon the accused to point out the guilty person. He comes before the court in the strength of the presumption of innocence. Can we overthrow this upon the evidence presented? No liquor or evidence of it in the man's place of business or in his habitat—nothing but a pop bottle of wild cat liquor—the larger part of which was outside the chicken enclosure. The neck, only, protruded under the fence and so was within the confines of the enclosure. In addition a Negro boy was under the influence of strong drink. The beer and its container, with the ice, was in the tall weeds outside of the fence, maybe in the constructive possession of the accused, but not where he actively maintained any enterprise. The setting might suggest a half dozen possible sources of its origin.

Recent cases decided by this court which dealt with circumstances very similar to these we have here are: *Sutherland* v. *Commonwealth*, 171 Va. 485, 198 S. E. 452; *Fairfax* v. *Commonwealth*, 177 Va. 824, 13 S. E. (2d) 315; *Powers* v. *Commonwealth*, 182 Va. 669, 30 S. E. (2d) 22.

■■ The first of these cases is very informative and we tersely said, through Mr. Justice Spratley, that the *prima facie* presumption that a person occupying or in control of premises is in possession of illegal liquor found thereon, which existed under former statutes, was wiped out by the enactment of the Alcoholic Beverage Control Act, section 4675 (1), *et seq.* of the Code of 1936. "The presence of liquor upon the premises of the owner or occupant is not sufficient, in the absence of statute, to overcome the presumption of innocence."

The judgment of the trial court is reversed, the verdict of the jury set aside, and the Commonwealth having apparently fully developed its evidence, the case is remanded, with the direction to dismiss the accused from further prosecution under the charge in the warrant.

*Reversed and remanded.*