# Richmond

JOHN LEONARD WILLIAMS v. COMMONWEALTH OF VIRGINIA.

June 16, 1952.

Record No. 3961.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Whittle, JJ.

The opinion states the case.

*Sidney Sacks*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General* and *Thomas M. Miller, Assistant Attorney General,* for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

The accused was convicted under an indictment charging him with having broken and entered, "in the night time", the Snack Bar in the city of Norfolk, with intent to commit larceny therein, and with the larceny of one pistol and $121.65 in cash, the property of the proprietor, Doyle R. Lynch.

Trial by jury was waived and the case was heard by the judge who found the accused guilty of "storebreaking with intent to commit larceny" and sentenced him to serve two years in the penitentiary. We granted a writ of error to the judgment.

The Commonwealth's evidence indicated that the alleged crime occurred between the hours of 5:00 p.m. on June 27, 1951, when the establishment was closed for the day, and 6:00 a. m. June 28, when it was opened for business.

There was no evidence to show how entry was made. It was assumed by the owner that entry had been through the front door as the lock was defective and could be opened without a key. It could be opened with a "fingernail file" or any similar instrument. All of the employees knew that the door could be so opened.

Lynch did not undertake to say when the place had been entered, whether in the daytime or night time, he did not know. He testified, however, that he saw the accused, together with Dorothy Buchanan and William Ellis, in front of his place of business around 9:30 on the night of the alleged entry.

Lynch further stated that Dorothy Buchanan had been employed as a waitress for about four days and that she and the other employees knew of his custom to take all large bills from the cash register and hide them "down between the two drink boxes, with a screen over it". On the afternoon of the 27th of June he says that he left "about $10.00 in the cash register and about $115.00 in the bag between the boxes". That the .32 Colt pistol belonging to his wife "stays in a drawer * * * right below the cash register". That when he returned the next morning, June 28, the money and the pistol were missing.

With the change in the cash register were two bent dimes which he had placed in the "back slot" of the register "because I didn't want to give them out for change and have somebody drop them in the juke box and foul that up".

Lynch stated that he also had some coins in the register marked with fingernail polish "so that when the juke box failed to play, I would take one of these coins out and instead of giving it to the customer, put it in and play a song". This was done to satisfy the customer, "and when the man (from whom the juke box was rented) opened the machine, he always gave it (the marked coin) back to me".

Lynch admitted that it was the custom of juke box operators

to mark coins with fingernail polish for the reason assigned, and that at times the marked coins were used to make change. He also admitted that he could not tell his marked nickels from others similarly marked.

Howard E. Barnes, a cook at the Snack Bar, stated that the money and pistol were missing when he arrived on the morning of June 28. He could not tell how or when entrance had been made. He had explained to the waitress, Dorothy Buchanan, how she could unlock the door without a key. He further stated that Dorothy Buchanan had been employed only four days before the break-in, and that the accused and William Ellis were in the Snack Bar every day that she worked there. Dorothy had been released after the trial in police court, having been found not guilty, and she was not present at the trial of the accused.

Detective Longmire testified that he and Sergeant Murden of the Norfolk Detective Bureau had been assigned to the case, that they arrested the accused about 9:45 on the morning of June 28. Upon searching him they found $19 in bills, $1.09 in change, and a Colonna shipyard button in his wallet. Included in the $1.09 in change were two bent dimes and two nickels with some red markings on them. The accused told them this was all the money he had but later they found $100 in a "wad" in the watch pocket of his trousers.

The detectives also testified, over the objection of the accused, as to how they came into possession of the pistol. This testimony is the subject of assignment of error No. 2 and will be treated later.

The accused took the stand in his own behalf. He stated that he had been employed at the shipyard as a mechanic's helper at $1.08 per hour, plus overtime; he was laid off about June 15, 1951, and that the money found on his person by the officers had been earned by him; he was living with his mother and was not required to pay room and board; and that he had about $176 when he was laid off from work.

Accused admitted telling the officers that the money found in his wallet was all he had on him, but said that he had changed trousers and thought at the time that the $100 had been left in his other clothes. He explained that he had gotten the two bent dimes and the marked nickels in change at the College Inn the night of June 27 when he, Ellis, and Dorothy Buchanan were there drinking beer and playing shuffleboard; that he had at-

tempted to insert one of the dimes in the machine, it had become clogged and he borrowed a knife from Mrs. Arzetta Phillips, cashier of the Inn, to recover the bent dime; that he secured change several times at College Inn on the night of June 27 for the purpose of playing shuffleboard, and that the bent dimes and marked nickels had evidently been obtained in this way. Accused was asked on cross-examination, for the purpose of impeachment, if he had not been previously convicted of a felony and he admitted that he had.

Mrs. Arzetta Phillips, cashier at College Inn, testified that the accused and William Ellis and the Buchanan girl were there on the night of June 27, that she made change for accused in order for him to play shuffleboard; that a bent dime had clogged the machine and accused had asked her for a knife to dislodge it; that she gave the accused change on two occasions and that it was possible for coins marked with fingernail polish to have been included in the change.

Bonita Adams, a waitress at the College Diner, located across the street from College Inn, testified that she had found nickels, dimes and quarters marked with fingernail polish in her change box.

Doyle R. Lynch was recalled by the Commonwealth and described how the nickels were marked. He said, "No, I didn't dip them, I laid them down and made a streak across them." He was asked if "other stores also use that system", and he answered, "some of them do, I think." On cross-examination he admitted that Mr. Parrott, owner of College Inn, had been in his place spending marked coins.

Two assignments of error are relied upon:

No. 1. "The trial court erred in overruling the defendant's motion for a new trial on the ground that the verdict was contrary to the law, and without evidence to support it."

No. 2. "The trial court erred in overruling the defendant's motion to strike from the evidence the pistol introduced into the evidence by the Commonwealth on the grounds there was no evidence to connect the defendant with the pistol stolen from the complaining witness."

As assignment No. 2 has a direct bearing upon the consideration of assignment No. 1 we will treat it first.

Over the objection of the accused, Detective Longmire was permitted to tell of Ellis taking him to an outbuilding at the

Ellis home and showing him where he buried the Colt pistol which had been taken from the Snack Bar.

At the suggestion of the attorney for the Commonwealth, and over objection of the accused, William Ellis was called as a court's witness. After the court had ascertained the name, age, occupation and address of the witness he was turned over to the Commonwealth's attorney for cross-examination. It developed that Ellis, together with the accused and Dorothy Buchanan, had been at College Inn, which is "right across the street" from the Snack Bar, on the evening of June 27; that while there he had consumed several beers. He went out of the Inn to urinate and while walking beside the building to a secluded spot he noticed the pistol on the ground, picked it up and placed it under his belt. He took it home and buried it in the outbuilding where he later showed it to the detectives.

The Commonwealth's attorney then asked the witness if he had not told the detectives that the accused had given him the gun on the night of June 27. The question was objected to on the ground that it sought to elicit hearsay evidence. The court overruled the objection. The witness answered that he had not told the officers that the accused had given him the gun. The same question had been asked at the preliminary hearing and the same answer given. The Commonwealth therefore was not taken by surprise. The attorney for the Commonwealth then called Detectives Longmire and Murden who testified over the objection of the accused that Ellis had told them that the accused gave him the pistol on the night of June 27.

█ The court ruled that the officers could testify as to what they contended Ellis told them "for the sole purpose of contradicting Ellis". The effect of their testimony was to get the evidence regarding the gun into the record. It was here sought to do indirectly that which could not be done directly. Such evidence would have been highly prejudicial had the case been on trial before a jury, and as the court was exercising the functions of a jury in this instance, the evidence was improperly admitted. Ellis should not have been called simply to permit the Commonwealth to contradict him. *Stoots* v. *Commonwealth,* 192 Va. 857, 866, 66 S. E. (2d) 866, 871.

█ The accused not being present when Ellis is alleged to have told the detectives that the gun had been given him by the accused rendered the evidence hearsay. *McBride* v. *Common-*

*wealth,* 95 Va. 818, 30 S. E. 454; 7 M. J., Evidence, § 195, page 579, *et seq.*

■ "Such testimony of inconsistent statements is admissible only for the purpose of impeaching the credit of the witness, but cannot be received as evidence of any fact touching the issue to be tried; for that would be to substitute the statements of a witness, generally when not on oath, as evidence between· the parties, for his evidence given under the sanction of an oath upon the trial." *Charlton* v. *Unis,* 4 Gratt. (45 Va.) 58, 60; *New York, etc., R. Co.* v. *Kellam,* 83 Va. 851, 3 S. E. 703; *Groety* v. *Commonwealth,* 135 Va. 508, 115 S. E. 561; *Smith* v. *Commonwealth,* 168 Va. 703, 711, 190 S. E. 91.

The first assignment of error challenges the sufficiency· of the evidence. The court convicted the accused "of storebreaking with intent to commit larceny". The conviction was under an indictment which charged the accused with breaking "in the night time".

■ In Virginia the offense of housebreaking is purely statutory. Virginia Code, 1950, §§ 18-160 and 18-161. Here housebreaking is the entry in the "night time" of a dwelling, office, shop, etc. with or without breaking, or the entry in the "daytime" by breaking. 3 M.J., Burglary and Housebreaking, § 3, page 635. Actual breaking involves the application of some force, slight though it may be, whereby the entrance is affected. *Davis* v. *Commonwealth,* 132 Va. 521, 110 S. E. 356.

There is no evidence in this case to show whether the alleged breaking occurred in the daytime or night time, and there is not sufficient evidence to show that the accused perpetrated the crime.

■ It is intimated by the Attorney General that the posession of stolen goods should be·sufficient to prove the commission of the crime. He assumes that the money found on the accused was taken from the Snack Bar. But bare evidence of the possession of the stolen goods is not sufficient of itself to support a conviction of housebreaking. *Stapleton* v. *Commonwealth,* 140 Va. 475, 124 S. E. 237.

■ "The general rule of the common law with regard to the evidence in cases of larceny, that the possession of goods recently stolen is *prima facie* evidence of guilt and throws upon the accused the burden of accounting for that possession has never been held to apply with the same effect in cases of burglary,

and the decided weight of authority is that it does not. Still, where goods have been obtained by means of a burglary or housebreaking, the fact of such possession is a most material circumstance to be considered by the jury in connection with other inculpatory circumstances. There must be some evidence of guilty conduct, besides the bare possession of the stolen property, before the presumption of burglary or housebreaking is superadded to that of larceny." 3 M.J., Burglary and Housebreaking, § 15, page 645; *Henderson* v. *Commonwealth,* 98 Va. 794, 34 S. E. 881. See also *Branch* v. *Commonwealth,* 100 Va. 837, 41 S. E. 862; *Bundick* v. *Commonwealth,* 97 Va. 783, 34 S. E. 454; *Walker* v. *Commonwealth,* 28 Gratt. (69 Va.) 969; *Hall* v. *Commonwealth,* 3 Gratt. (44 Va.) 593. We have held that the possession of stolen goods is of itself not even *prima facie* evidence of housebreaking. *Walters* v. *Commonwealth,* 159 Va. 903, 165 S. E. 495.

As before stated, the evidence presented in this record is insufficient to convict the accused. His guilt has not been established beyond a reasonable doubt as is required by law. *Powers* v. *Commonwealth,* 182 Va. 669, 30 S. E. (2d) 22. The Commonwealth has here shown little more than that the accused had an opportunity to commit the crime. Others had an equal opportunity, and no burden is upon the accused to point out the guilty person. *Charles* v. *Commonwealth,* 184 Va. 63, 34 S. E. (2d) 136.

If the "two bent dimes" and the "two marked nickels" are excluded, suspicion could hardly be said to point to the accused as the perpetrator of the crime. He shows without contradiction that he had been employed in the shipyard and had recently been paid a substantial sum of money. It is further established that he received a bent dime in change at College Inn and the shuffleboard machine clogged when he attempted to use it. The Commonwealth's evidence shows that the neighborhood in which the crime was alleged to have been committeed was abundantly supplied with coins marked with "fingernail polish" as were the two nickels found upon the accused.

And further, the Commonwealth's evidence shows that the large bills had been taken from the cash register by the proprietor of the Snack Bar and carefully hidden under a screen between two drink boxes. The money had been hidden by the proprietor for the express purpose of making it hard to find

in the event of a break-in. It was more likely to be found by someone who knew the hiding place. There is no evidence that the accused knew where the money was hidden.

■ Where facts are established which are susceptible of two interpretations, one of which is consistent with the innocence of the accused, the jury or the judge trying the case cannot arbitrarily adopt the interpretation which incriminates him. *Mansfield* v. *Commonwealth,* 146 Va. 279, 135 S. E. 700; *Canter* v. *Commonwealth,* 123 Va. 794, 96 S. E. 284; *Garnett* v. *Commonwealth,* 117 Va. 902, 83 S. E. 1083. The interpretation more favorable to the accused should be adopted unless it is untenable under all the facts and circumstances of the case. *Dixon* v. *Commonwealth,* 162 Va. 798, 173 S. E. 521; *Sutherland* v. *Commonwealth,* 171 Va. 485, 198 S. E. 452.

■ Suspicion of guilt is not sufficient. It must be shown beyond a reasonable doubt that the accused is the criminal agent and the Commonwealth has failed to carry this essential burden. *Brown* v. *Commonwealth,* 97 Va. 791, 792, 34 S. E. 882; *Hairston* v. *Commonwealth,* 97 Va. 754, 32 S. E. 797.

For the foregoing reasons the judgment is reversed and the case remanded for a new trial if the Commonwealth be so advised, to be had in accordance with the views herein expressed.

*Reversed and remanded.*