COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Elder and Senior Judge Cole
Argued at Richmond, Virginia


MELINDA MAY MENDEZ

MEMORANDUM OPINION[*] BY

v.    Record No. 0946-99-2      JUDGE JERE M. H. WILLIS, JR.
JULY 18, 2000

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Paul M. Peatross, Jr., Judge

Frank K. Friedman (Donald D. Long; Woods,
Rogers & Hazlegrove, P.L.C., on briefs), for
appellant.

Stephen R. McCullough, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


On appeal from her conviction of grand larceny, in violation of Code § 18.2-95, Melinda May Mendez contends that the evidence was insufficient to support her conviction.  We affirm the judgment of the trial court.

On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

---

* Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

<u>Martin v. Commonwealth</u>, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

Mr. and Mrs. Ayad Al-Hamdani employed Mendez on Wednesdays and Thursdays for six weeks as a maid. At noon on Thursday, May 14, 1998, Mendez arrived at the Al-Hamdanis' home just as Mrs. Al-Hamdani was leaving to run errands. When Mrs. Al-Hamdani returned at 2:30 p.m., Mendez was gone. She had not completed her work, and cleaning supplies were left in the hallway. Mrs. Al-Hamdani's desk was in disarray.

When Mr. Al-Hamdani arrived home, he checked his desk and found missing a black pouch containing $4,200 in cash. He testified that he had seen the pouch containing the money in the desk drawer within forty-eight hours prior to May 14. Only he knew of the presence of the cash, because he was saving it to buy a birthday present for his wife.

Mrs. Al-Hamdani attempted to call Mendez. Although she called repeatedly, she received no answer. The police were also unable to locate Mendez.

Mendez denied taking the money. She testified that she had left the Al-Hamdanis' home about 1:45 p.m. because she was ill and had left a note explaining her early departure. However, the Al-Hamdanis found no note.

From the time Mr. Al-Hamdani last saw the money to the discovery of the loss, only family members and Mendez had been in the home. The house was usually locked when the family was

-

away, the only exception being the time from Mendez's departure to Mrs. Al-Hamdani's return on May 14. The Al-Hamdanis' twelve-year-old daughter did not have friends in during the week. There was no evidence of forced entry.

Mendez contends that the Commonwealth failed to prove her guilt, because the evidence failed to exclude every reasonable hypothesis consistent with innocence. See Vaughan v. Commonwealth, 7 Va. App. 665, 675, 376 S.E.2d 801, 807 (1989). She argues that another person could have come into the house and taken the money before or after she left, that workmen were in the neighborhood that week, and that a friend of the family could have entered and taken the money. None of these hypotheses is supported by the evidence. Only forty-five minutes elapsed between Mendez's departure and Mrs. Al-Hamdani's return. Nothing in the house was disturbed except Mrs. Al-Hamdani's desk.

Mendez explained that she was ill, that she left the Al-Hamdanis' home because of her illness, and that she did not answer her phone because she was sleeping. The trial court, however, was not required to accept Mendez's explanation of the events. "In its role of judging witness credibility, the [trial court] is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal [her] guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). In judging her credibility, the

-

trial court was entitled to consider the Commonwealth's impeachment evidence, disclosing that Mendez attended an aunt's birthday party on the night of May 14, that her behavior on May 14 contrasted with her usual routine, and that she had been convicted of seven felonies and a misdemeanor involving lying, cheating, or stealing.

The dissent argues that this case is controlled by Simmons v. Commonwealth, 219 Va. 181, 247 S.E.2d 359 (1978). Simmons was the night operator of his employer's service station, running the station between 6:00 p.m. and its 9:00 p.m. closing. Two daytime employees also had keys to the station. The employer left the station at 5:30 p.m. on the evening in question and did not return until 7:30 a.m. the next morning, when he found the station unlocked and unattended with sundry items of cash and merchandise missing. Simmons could not be located. Reversing Simmons' conviction for embezzlement, the Supreme Court held that the evidence proved only that he had the opportunity to steal the missing items and that he apparently fled, and was thus insufficient to prove that he was the thief.

This case is distinguishable from Simmons. In Simmons, the evidence did not prove whether Simmons had closed and locked the station properly. It did not prove how the station came to be unlocked. It established an all night window from 9:00 p.m. to 7:30 a.m. when a thief other than Simmons could have gained access. It established that two other employees had keys.

-

In this case, the evidence, taken in the light most favorable to the Commonwealth, proved that only members of the family and Mendez were in the house between the time Mr. Al-Hamdani last saw the money and the time the loss was discovered. The time from Mrs. Al-Hamdani's departure to her return was brief, and during at least most of that time, with the exception of only forty-five minutes, Mendez was on the premises. There was no evidence that anyone else entered the house during that time. Thus, the evidence in this case not only proved that Mendez had the opportunity to steal the money and thereafter behaved furtively and in a manner suggestive of guilt, but also excluded anyone else as a possible thief.

The judgment of the trial court is affirmed.

<u>Affirmed.</u>

Elder, J., dissenting.

Because I believe the evidence fails to exclude all reasonable hypotheses of innocence flowing from it, I would reverse the conviction of Mendez (appellant). Therefore, I respectfully dissent.

No direct evidence linked appellant to the crime or even the desk from which the money was taken. No one saw her take the money, and her fingerprints were not recovered from the desk.

Where the evidence is entirely circumstantial, "all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and must exclude every reasonable hypothesis of innocence. . . . The circumstances of motive, time, place, means, and conduct must all concur to form an unbroken chain which links the defendant to the crime beyond a reasonable doubt." Bishop v. Commonwealth, 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984).

> [I]f facts are susceptible to two different interpretations, "one of which is consistent with the innocence of the accused, the [fact finder] cannot arbitrarily adopt the interpretation which incriminates him." Instead, "[t]he interpretation more favorable to the accused should be adopted unless it is untenable under all the facts and circumstances of the case."

Varker v. Commonwealth, 14 Va. App. 445, 447, 417 S.E.2d 7, 8 (1992) (quoting Williams v. Commonwealth, 193 Va. 764, 772, 71 S.E.2d 73, 77 (1952)).

-

Here, the circumstantial evidence, viewed in the light most favorable to the Commonwealth, established that Mr. Al-Hamdani had last seen the pouch containing the money some forty-eight hours before he discovered it missing on the afternoon of May 14. The majority states that "[t]he house was always locked when the family was away, the only exception being the time from [appellant's] departure to Mrs. Al-Hamdani's return on May 14." However, Mrs. Al-Hamdani testified merely that the house was "usually . . . locked," and said that, on May 14, she had the front door open . . . with a little stop" before appellant came to work that day. Although appellant arrived before Mrs. Al-Hamdani departed, the front door was unlocked when Mrs. Al-Hamdani returned about two-and-one-half hours later; appellant was not present at that time; and the house had been unlocked and unoccupied for at least forty-five minutes. Mrs. Al-Hamdani testified that no one other than she, Mr. Al-Hamdani, her twelve-year-old daughter, infant son, and appellant had been in the house that week. However, Mrs. Al-Hamdani did not testify that she had been home that entire time and, as outlined above, the evidence established that, on May 14, the front door was unlocked while no one was at home.

Other evidence left open the reasonable hypothesis that the money could have been taken by someone with access to the house even when it was locked. Mrs. Al-Hamdani's twelve-year-old daughter resided in the house but did not testify, leaving the

-

reasonable hypothesis that she could have taken the money. The evidence also established that the Al-Hamdanis' neighbors had keys to the house and could have entered even at a time when the door was locked.

The trial court focused on the credibility of appellant's statements and whether she left a note explaining her hasty departure on May 14. Although the trial court clearly was entitled to disregard appellant's testimony about the note, this rejection did not constitute affirmative evidence of appellant's guilt. See Tucker v. Commonwealth, 18 Va. App. 141, 144, 442 S.E.2d 419, 421 (1994). Appellant's failure to return to work, respond to telephone calls, or collect her pay for the portion of the week she did work was suspicious but was not affirmative evidence of guilt. The remaining evidence, viewed in the light most favorable to the Commonwealth, did not exclude the reasonable hypothesis that Mrs. Al-Hamdani's daughter, the neighbors with the keys, or someone other than appellant entered the house and took the pouch and money in the forty-eight hours since Mr. Al-Hamdani had last seen it.

The facts here closely resemble those in Simmons v. Commonwealth, 219 Va. 181, 247 S.E.2d 359 (1978), in which the Court held the evidence insufficient as a matter of law to prove criminal agency. See id. at 183, 247 S.E.2d at 360. In Simmons, the defendant was a gas station attendant employed to work the 6:00 p.m.-to-9:00 p.m. shift. See id. at 182, 247

-

S.E.2d at 359.  Two other employees worked from 7:00 a.m. to 6:00 p.m. and had keys to the station.  See id.  On the evening in question, the owner departed the station at 5:30 p.m. and received no answer when he telephoned the station at 9:05 p.m. that evening.  See id.  When the owner arrived the next morning, he discovered that the station's doors were unlocked and that $100 in cash and various tools and merchandise were missing, but he admitted that he "had not taken a physical inventory for several days."  Id. at 182, 247 S.E.2d at 359-60.  Although the defendant, who had worked six days prior to the theft, was owed $70 in wages, the police officer investigating the theft was unable to locate him for a period of at least six months.  See id. at 182, 247 S.E.2d at 360.

The Court held, "[a]ll that reasonably may be inferred from the evidence is that [the defendant] had the opportunity to commit the crime and that he fled at a time when wages were payable to him."  Id. at 183, 247 S.E.2d at 360.  This "opportunity and subsequent flight, while sufficient to arouse strong suspicion, [were] not themselves sufficient to support [the defendant's] conviction."  Id. (emphasis added). Therefore, assuming appellant's failure to report to work or to answer her phone could be considered flight, even this evidence was insufficient to prove she took the money.

-

Therefore, I would hold the circumstantial evidence does not exclude all reasonable hypotheses of appellant's innocence, and I respectfully dissent.