COURT OF APPEALS OF VIRGINIA


Present: Judges Baker, Coleman and Overton
Argued at Salem, Virginia


OTIS LEE MAXEY
                                          OPINION BY
v.       Record No. 0836-97-3    JUDGE SAM W. COLEMAN III
                                     FEBRUARY 10, 1998
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
                 William W. Sweeney, Judge

          Bryan K. Selz (Overbey, Hawkins & Selz, on
          brief), for appellant.

          Marla Graff Decker, Assistant Attorney
          General (Richard Cullen, Attorney General, on
          brief), for appellee.


     Otis Lee Maxey was convicted by a jury for the abduction and

rape of his former wife.  On appeal, Maxey contends the trial

court erred by allowing the Commonwealth to impeach his mother,

called as a Commonwealth witness, with inconsistent statements

she previously had given to a police investigator.  Maxey argues

the Commonwealth could not impeach his mother because she was not

an adverse witness, and the Commonwealth knew prior to her

testimony that she would testify unfavorably.  We hold that

appellant's mother was an adverse witness and, therefore, the

Commonwealth could impeach her with her prior inconsistent

statements.  Accordingly, we affirm the convictions.

                       I.  BACKGROUND

     Appellant was tried before a jury for the rape and abduction

of his former wife, Christina Poore.  Poore testified that on the

day of the rape, she and three of her children went to the appellant's trailer to visit two of her other children who were in Maxey's custody.  The trailer was located adjacent to the property of Rebecca Maxey (Mrs. Maxey), the appellant's mother.

When Poore arrived, appellant invited her inside his trailer while the children were at his mother's home.  According to Poore, once she was inside, appellant locked the door, physically forced her onto his bed, began taking her clothes off, and told her he was going to have sexual intercourse with her.  Poore resisted and began to scream.  Poore testified that shortly thereafter, Mrs. Maxey entered the trailer with all five of Poore's children.  She stated that Mrs. Maxey began to hit appellant and told him to get off Poore.  When appellant reached for a file cabinet where he kept a gun, Mrs. Maxey and Poore struggled to restrain him.  Appellant pushed his mother away and punched Poore in the left eye.  Eventually, according to Poore, he grabbed the gun and demanded that Mrs. Maxey and the children leave the trailer.  Poore also testified that the appellant warned Mrs. Maxey not to call anyone or he would "blow [Poore's] head off."  Poore claimed that after Mrs. Maxey and the children left the trailer, the appellant forcibly raped her.

After Poore testified, the Commonwealth called Mrs. Maxey as a witness.  The Commonwealth's attorney requested that Mrs. Maxey be declared an adverse witness because of her relationship to the appellant and that he be permitted to cross-examine her.

- 2 -

Appellant asserted that his mother could not be declared an adverse witness based solely on her relationship to him. Appellant further informed the court and the Commonwealth's attorney that his mother's anticipated testimony would not substantiate Poore's account of the incident, as the Commonwealth may have anticipated. Thus, appellant argued, the Commonwealth could not claim surprise when Mrs. Maxey testified or claim that she was an adverse witness; therefore, it could not cross-examine her or impeach her with conflicting statements she may have previously made to the police investigator.

Out of the jury's presence, the judge conducted voir dire of Mrs. Maxey to preview her testimony. Mrs. Maxey stated that when she entered the appellant's trailer the door was not locked. She stated that appellant and Poore were merely arguing and watching television. She denied that she tried to keep appellant away from his gun, that she saw appellant strike Poore in the face, or that appellant threatened her. Mrs. Maxey did testify that Poore had a "mark" under her left eye and that Poore told appellant that she wanted to leave the trailer and go home.

After previewing Mrs. Maxey's proffered testimony, the court declared that she was an adverse witness because of her relationship to the appellant and because the Commonwealth was surprised by her unfavorable testimony. As a result, the court ruled that the Commonwealth could cross-examine her and could impeach her with any prior inconsistent statements she may have

made to the investigator.  The Commonwealth called Mrs. Maxey as an adverse witness, and she testified substantially as she did in voir dire.  When confronted with and asked about the contradictory statements she allegedly had made to the investigator, she denied having made them.  The Commonwealth was allowed to impeach Mrs. Maxey by calling the investigator, who testified that Mrs. Maxey had made a number of statements to him that were inconsistent with her testimony at trial.

The jury convicted Maxey for rape and abduction and recommended that he be sentenced to eighteen years in the penitentiary for rape and one year for abduction, which the trial judge imposed.

## II.  ANALYSIS

As a general rule at common law, a party was not allowed to impeach its own witness.  See Washington & O.D. Ry. v. Jackson's Adm'r, 117 Va. 636, 85 S.E. 496 (1915).  A party calling a witness was considered to have vouched for the witness' credibility and was not allowed to prove that the witness was unworthy of belief, even if the witness spoke against the party in some respects.  Spencer A. Gavel, Jones on Evidence § 26:10, at 194 (6th ed. 1972).  By statute, the English Parliament long ago modified the common law rule to allow a party to impeach its own witness with prior inconsistent statements, provided the witness proved adverse.  Id.  Similarly, Virginia has enacted two statutes that impact the common law rule.  Code § 8.01-403 allows

a party producing a witness to "prove that he has [previously] made a statement inconsistent with his present testimony," provided that witness "proves adverse."  Under Code § 8.01-401, a party may call a witness "having an adverse interest" and "may examine such person according to the rules applicable to cross-examination."  See also Mastin v. Theirjung, 238 Va. 434, 439-40, 384 S.E.2d 86, 89 (1989).  Although one commentator takes the view that the cases applying these two statutes do not clearly define the scope and circumstances when each statute will apply, see Charles E. Friend, Law of Evidence in Virginia § 4-9, at 147 (4th ed. 1993) ("Much confusion has resulted from the failure to distinguish between the witness who 'proves adverse' and the 'adverse witness.'"), our common law clearly holds, albeit with little discussion, that a party may impeach a witness having an adverse interest with the witness' prior inconsistent statements.  See Stoots v. Commonwealth, 192 Va. 857, 866, 66 S.E.2d 866, 871 (1951) (upholding trial court's decision to allow Commonwealth to call defendant's sister as adverse witness and contradict her testimony with her prior inconsistent statements). Thus, we consider whether either of the two statutes, in addition to the Stoots decision, authorized the trial court to allow the Commonwealth to impeach Mrs. Maxey's testimony with her prior inconsistent statements.[1]

_____

[1] Both statutes apply in criminal as well as civil proceedings.  See Trout v. Commonwealth, 167 Va. 511, 516, 188 S.E. 219, 221 (1936); Tate v. Commonwealth, 155 Va. 1016, 1024, 154 S.E. 508, 511 (1930).

Code § 8.01-403 permits the impeachment of a witness who "proves adverse." The term "adverse," under this section, refers to a witness whose testimony is "injurious or damaging to the case of the party who called the witness." Ragland v. Commonwealth, 16 Va. App. 913, 920, 434 S.E.2d 675, 680 (1993). A party's own witness "prove[s] adverse" if the witness "surprise[s] the party by changing stories or becoming hostile on the stand." Friend, supra, § 4-9, at 147 (emphasis added); see Roberts v. Commonwealth, 230 Va. 264, 269-70, 337 S.E.2d 255, 259 (1985) (holding that witness proved adverse where prosecutor was "surprised by what [his own witness] said when he began testifying"). Thus, Code § 8.01-403 allows a party to impeach his or her own witness by prior inconsistent statements only when the witness whom the party expected to testify favorably has suddenly given unexpected, adverse testimony on the stand. See Friend, supra, § 4-9, at 149.

In this case, the Commonwealth was not surprised when Mrs. Maxey testified unfavorably on the stand about some aspects of what she had seen. The Commonwealth was aware before Mrs. Maxey took the stand that parts of her testimony would conflict with parts of her earlier statements to the investigator and in some respects was injurious to its case. Accordingly, Mrs. Maxey did not "prove adverse" within the meaning of Code § 8.01-403 and the Commonwealth could not impeach her testimony pursuant to that section.

- 6 -

Code § 8.01-401(A), on the other hand, refers to calling a witness "having an adverse interest," or commonly referred to as an "adverse witness."[2] See Friend, supra, § 4-9, at 149-50. A witness does not have an "adverse interest" simply because his or her testimony is adverse or injurious to the calling party's case. See Butler v. Parrocha, 186 Va. 426, 433, 43 S.E.2d 1, 4 (1947) (distinguishing witness "having an adverse interest" from "adverse testimony" provided by witness who "proves adverse" within the meaning of statutory predecessor to Code § 8.01-403). Rather, an "adverse witness" is an opposing party or a nonparty witness who has a financial or other personal interest in the outcome of the case. See Daniels v. Morris, 199 Va. 205, 211, 98 S.E.2d 694, 698 (1957); Butler, 186 Va. at 431, 43 S.E.2d at 4. A witness who has a personal interest in the outcome of the case includes persons who are "closely connected by blood or otherwise to at least one party"; thus, close relatives of a party are witnesses who have an "adverse interest" within the meaning of Code § 8.01-401(A). Butler, 186 Va. at 434, 43 S.E.2d at 5.

Mrs. Maxey is appellant's mother. Although parts of her testimony were relevant and provided details of the facts

---

[2]Although Code § 8.01-401(A) refers to a "party" having an adverse interest, the Virginia Supreme Court has determined that "the legislature intended to include, first, a party to the litigation, and, second, a person, though not a party, who had a financial or other personal interest in the outcome." Butler v. Parrocha, 186 Va. 426, 432, 43 S.E.2d 1, 4 (1947) (emphasis added).

surrounding the incident that led to the charges, some aspects of her testimony were not supportive of the Commonwealth's charges. Because of her close blood relationship to the appellant, Mrs. Maxey was an adverse witness. Although the Commonwealth could not have called Mrs. Maxey solely for the purpose of impeaching her with her prior statements, the Commonwealth was entitled to prove the relevant facts about which she testified. Because she was adverse to the Commonwealth, the Commonwealth could impeach her with her contradictory statements. In Stoots, the Supreme Court upheld the trial court's ruling that allowed the Commonwealth to call the defendant's sister as an adverse witness and impeach her with her prior inconsistent statements. 192 Va. at 866, 66 S.E.2d at 871. Likewise, in this case, the Commonwealth was permitted to impeach Mrs. Maxey with her prior statements to the police investigator where her testimony was adverse to the Commonwealth's position.

Furthermore, appellant's reliance on Williams v. Commonwealth, 193 Va. 764, 71 S.E.2d 73 (1952), is misplaced. Williams held that a party may not call an adverse witness for the sole purpose of impeaching his or her testimony. 193 Va. 769, 71 S.E.2d at 76. Irrespective of whether the trial court gives the jury a limiting instruction, such a practice is highly prejudicial to the other party, allowing the calling party to use statements "directly . . . which could not be [used] indirectly." Id. In this case, Mrs. Maxey testified that Poore was crying

and wanted to leave the trailer and that she left the trailer with a bruise on her left eye which she did not have when she first arrived on the property. Thus, some aspects of Mrs. Maxey's testimony substantiated Poore's account of the incident and, therefore, were favorable to the Commonwealth's case. Accordingly, the Commonwealth did not call Mrs. Maxey for the sole purpose of impeaching her testimony.

For these reasons, we hold that the trial court did not abuse its discretion when it declared Mrs. Maxey to be an adverse witness and allowed the Commonwealth to impeach her with her prior inconsistent statements; accordingly, we affirm the convictions.

<u>Affirmed.</u>