COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Baker and Bray
Argued at Norfolk, Virginia


KEVIN STANLEY PAINTER

                                    MEMORANDUM OPINION[*] BY
v.         Record No. 1502-97-1     JUDGE RICHARD S. BRAY
                                         APRIL 7, 1998
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                          John K. Moore, Judge

              Theresa B. Berry (Samford & Berry, P.C., on
              brief), for appellant.

              Jeffrey S. Shapiro, Assistant Attorney
              General (Richard Cullen, Attorney General, on
              brief), for appellee.


    A jury convicted Kevin Stanley Painter (defendant) for the

rape and murder of Amber Zajac (victim).  On appeal, defendant

complains that the trial court erroneously (1) declined to

declare a defense witness adverse, thereby precluding impeachment

by defendant through prior inconsistent statements,[1] and (2)

refused an instruction admonishing the jury on the proper

consideration of a "person['s] false statement to the police."

Finding no error, we affirm the convictions.

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

[1]On brief, defendant also argues that the trial court
erroneously refused to admit the witness' prior inconsistent
statements as declarations against penal interest.  However, this
issue was not presented in defendant's petition for appeal and
will not now "be noticed" by this Court.  Rule 5A:12(c).

At approximately midnight on August 7, 1995, the victim began to walk home following a visit with friends. When she failed to arrive as expected, family members initiated a search of the area and soon discovered the victim's partially clothed body along a wooded path en route from the friends' home. She had been beaten, raped and strangled by an assailant.

The ensuing investigation immediately focused on Kenneth Pallett, a nearby resident who had approached police at the scene and offered his assistance. Pallett agreed to a police interview and volunteered hair and blood specimens for forensic examination. During the interview, Pallett provided numerous conflicting statements relative to the offenses. After initially denying involvement and implicating others in the crimes, he described himself as "lookout," while an individual known to Pallett only as "Toothless" attacked the victim. As a result, police arrested and charged Pallett with the offenses.

Nevertheless, police continued to investigate and, on August 17, 1995, Detective Alan Ball interviewed defendant. Defendant admitted that he had seen the victim immediately prior to her death, but denied any sexual contact. Police also obtained blood and hair samples from defendant.

Comparisons of the blood and hair characteristics of Pallett and defendant with "genetic material" recovered from the victim eliminated Pallett as a source of the male donor DNA but

identified defendant, with statistical certainty, as the contributor. Pallett was thereafter released, and police arrested defendant.

At trial, Pallett, called as a defense witness, testified that he was at home with his family at the time of the offenses. Defendant then moved the court to declare Pallett "an adverse witness," testifying to divert suspicion from himself to defendant. In overruling the motion, the court observed that "there is very convincing and uncontradicted evidence that . . . Pallett has been totally exonerated." However, the court permitted defendant's counsel to "refresh [Pallett's] recollection" with his earlier statements to police and to then inquire into these diverse accounts. Pallett attributed the inconsistencies to a decision to "say anything, whatever they wanted to hear so they would let me go."

Defendant testified, claiming that he and the victim had engaged in consensual sex and that the victim was dressing when he left the wooded area.

## II.

"As a general rule at common law, a party was not allowed to impeach its own witness." Maxey v. Commonwealth, 26 Va. App. 514, 518, 495 S.E.2d 536, 538 (1998) (citation omitted). However, "Virginia has enacted two statutes that impact [this] rule," Code §§ 8.01-401, -403. Id. Code § 8.01-401 permits a party to call a witness "having an adverse interest" and examine

such witness "according to the rules applicable to cross-examination." Code § 8.01-401. The statute contemplates persons with a "financial or other personal interest in the outcome of the case." Maxey, 26 Va. App. at 520, 495 S.E.2d at 539; Weller v. Commonwealth, 16 Va. App. 886, 892, 434 S.E.2d 330, 335-36 (1993). Thus, a party may impeach an adverse witness with prior statements inconsistent with his or her trial testimony. Id.

Code § 8.01-403 also allows a party producing a witness to "prove that he has made at other times a statement inconsistent with his present testimony," provided such witness "shall in the opinion of the court prove adverse." Code § 8.01-403 (emphasis added). A witness "prove[s] adverse" "when the witness whom the party expected to testify favorably has suddenly given unexpected, adverse testimony on the stand," Maxey, 26 Va. App. at 519-20, 495 S.E.2d at 539, testimony "injurious or damaging to the . . . party who called the witness." Ragland v. Commonwealth, 16 Va. App. 913, 920, 434 S.E.2d 675, 680 (1993). The trial court must exercise its sound discretion in determining if a witness has proven adverse. See Code § 8.01-403; Maxey, 26 Va. App. at 522, 495 S.E.2d at 540.

Here, counsel first moved the court to declare Pallett an adverse witness after Pallett testified that he was "in [his] house" during the offenses. The court concluded, however, that Pallett had "been totally exonerated" by "convincing and

- 4 -

uncontradicted evidence" and was "not an adverse witness," leaving defendant with "no basis . . . to cross-examine" him pursuant to Code § 8.01-401. Further, Pallett's trial testimony was neither "damaging" nor "injurious" to defendant's case within the purview of Code § 8.01-403. Thus, there was no statutory authority for defendant to impeach Pallett, either as an adverse witness or a witness whose testimony proved adverse, and the court properly denied his motion.

Moreover, it is clear from the record that the court, nevertheless, permitted defendant to thoroughly question Pallett regarding his conflicting statements to police, including actual use of the interview to "refresh the witness' recollection."

### III.

"If the principles set forth in a proposed instruction are fully and fairly covered in other instructions that have been granted, a trial court does not abuse its discretion in refusing to grant a repetitious instruction." Joseph v. Commonwealth, 249 Va. 78, 90, 452 S.E.2d 862, 870 (1995) (citations omitted). "In fact, trial courts should avoid giving redundant or repetitive jury instructions." League v. Commonwealth, 9 Va. App. 199, 210, 385 S.E.2d 232, 239 (1989) (citation omitted).

Defendant's proposed instruction admonished the jury that, "if a person gives a false statement to the police, this creates no presumption that the person is guilty of having committed the crime." It was rejected by the trial court as an "improper

comment on specific evidence."  However, the jury was charged, in pertinent part:  "You are the judges of the facts, the credibility of the witnesses, and the weight of the evidence. You may consider . . . their prior inconsistent statements, or whether they have testified untruthfully . . . [to] determine which witnesses are more believable and weigh their testimony accordingly."  <u>Virginia Model Jury Instructions</u>, Criminal, No. 2.500 (1993 repl. ed. with 1997 Supp.).  Thus, the jury was properly instructed on the credibility issue, the subject of defendant's proposed instruction.

Accordingly, we affirm the convictions.

<u>Affirmed.</u>