COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Ortiz and Causey
Argued at Fairfax, Virginia


MYISON IAEENE ELLIS, S/K/A
  MYI'SON IAEENE ELLIS
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1390-20-4           JUDGE DORIS HENDERSON CAUSEY
                                                        SEPTEMBER 20, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Herman A. Whisenant, Jr., Judge Designate

Jessica N. Sherman-Stoltz (Sherman-Stoltz Law Group, PLLC, on
briefs), for appellant.

Liam A. Curry, Assistant Attorney General (Mark R. Herring,[1]
Attorney General, on brief), for appellee.


Myi'son Iaeene Ellis ("appellant") appeals convictions, after a jury trial in the Circuit

Court of Fauquier County, of first-degree murder, in violation of Code § 18.2-32; conspiracy to

commit robbery, in violation of Code §§ 18.2-58 and 18.2-22; and use or display of a firearm in

committing a felony, in violation of Code § 18.2-53.1.  For the following reasons, we affirm.

I. BACKGROUND

On August 26, 2019, Lincoln Williams, Jr., was shot outside his residence and died from

a single gunshot wound to the head.  Appellant, Daniel Farmer, and Lucretia Robinson were

charged in relation to this incident.[2]  Daniel Farmer and his sister, Karen Farmer, shared a house

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

[2] The alleged co-conspirators were tried separately from appellant.

with their mother and Lucretia Robinson. Appellant had a brief romantic relationship with Karen Farmer and is alleged to be the father of her child.

Karen Farmer testified for the Commonwealth. She testified that a week to a couple days before the robbery, she heard her brother, Daniel Farmer, talking about "set[ting] up [Lincoln Williams, Jr.] for a robbery." She testified that on August 26, 2019, appellant, Robinson, and Daniel Farmer left the Farmers' house while "it was dark." Daniel Farmer came back to the house first, around 10:00 p.m. Robinson and appellant returned later. Ms. Farmer noticed that appellant was upset and had a scratch underneath his right eye. Ms. Farmer testified that, after some prompting, appellant told her that he and Robinson had gone to the victim's house. Appellant had walked up to the victim's house and stood by a tree in the front yard. The victim pulled into the driveway and exited his vehicle. Appellant then approached the victim, took out the gun, and told the victim to "give up . . . the drugs or the money." After the victim did not give appellant what he wanted, the appellant pistol-whipped the victim, and the two "tussled a little bit." After that, appellant shot the victim and appellant left the scene.

Lucretia Robinson also testified for the Commonwealth. She testified that around August 10, 2019, she heard Daniel Farmer talking about robbing someone. Around 10:00 p.m. on August 26, 2019, she, along with appellant and Daniel Farmer, left the Farmers' house. She drove her own car and followed behind appellant and Daniel, who rode together in a separate vehicle. During the trip, both cars stopped, and appellant got into the passenger seat of Robinson's car. Appellant had a gun with him. Robinson drove and eventually parked at "a grassy part . . . outside of the driveway of a house." She later confirmed that they parked in front of the driveway belonging to the neighbor who lived to the right of the victim's house. Appellant exited the car, taking the gun with him, and was gone for fifteen to twenty minutes. Robinson testified she could not see where appellant went because "[i]t was dark." She stated

- 2 -

that "[a]fter a period of time, [she] heard a gunshot." Appellant came back to the car carrying a bookbag. Robinson testified that appellant said, "if he hadn't have fought back [I] wouldn't have had to pop him." Robinson then drove appellant to his mother's house in Manassas, Virginia.

On cross-examination, defense counsel attempted to impeach Karen Farmer's testimony with prior inconsistent statements but was precluded by the trial court from doing so. The next day, appellant re-called Karen Farmer as a witness and requested to treat her as an adverse witness. The Commonwealth objected; appellant replied, reasoning that "[Karen Farmer's] testimony, when the Commonwealth called her as their witness, has to do with the alleged admission to the shooting that my client allegedly told her in the bathroom. Her interests are adverse [sic] to my client['s] interests." The trial court stated:

> That won't make her adverse for the purposes of calling her as an adverse witness. You can go ahead and ask questions and if we find out she's adverse, then I will let you treat her as an adverse witness, but just because she might be testifying to something that is not in your client's favor, doesn't obviously make her adverse, especially after she was on the stand yesterday on direct examination and cross-examination.

The victim's father also testified for the Commonwealth. The father stated that after the victim had been shot, he asked the victim "who did it," to which the victim responded, "Rude Boy." The victim's father testified that "Rude Boy" is a nickname for Daniel Farmer.

As part of the defense's case, appellant called his mother, Lillian Scott, as an alibi witness. Ms. Scott testified that appellant was with her, at her house, when the attempted robbery and murder took place. On cross-examination, the jury heard that Ms. Scott was very close with her son, the appellant. The Commonwealth asked Ms. Scott why she "never told the police after [appellant] was arrested that there must be some mistake," that "[appellant] was with [her] when this [the crime] happened." The Commonwealth impeached Ms. Scott's credibility using a statement Scott made during a phone call with appellant on February 19. The next day,

defense counsel again called Lillian Scott as a witness and attempted to introduce a recording of the February 19 phone call in order to put the statement into context but was precluded from doing so.

Appellant also testified in his own defense, claiming that he was at his mother's house at the time of the attempted robbery and murder.

This appeal follows.

## II. ANALYSIS

### A. Motions for Continuance

Appellant argues that his convictions should be reversed because the trial court erred in denying his two motions for continuance. Appellant argues that he was prejudiced by the trial court's denial of these motions. He argues that he needed extra time to: go through "late discovery" provided by the Commonwealth, namely numerous "jail calls" made by appellant's alleged co-conspirators and "Facebook records"; complete "pending forensic reports"; further investigate items of physical evidence; request transcripts for audio recorded interviews of appellant's alleged co-conspirators; and locate an "essential witness."

"Whether a continuance should be granted is a matter submitted to the trial court's discretion, and its decision will not be disturbed on appeal unless it is plainly wrong." *Mason v. Commonwealth*, 7 Va. App. 339, 343 (1988). "[W]e may reverse a trial court's denial of a motion for a continuance only if it appears from the record: (1) that the court abused its discretion and (2) that the movant was prejudiced by the court's decision." *Shackleford v. Commonwealth*, 32 Va. App. 307, 320 (2000) (quoting *Lebedun v. Commonwealth*, 27 Va. App. 697, 712-13 (1998)), *aff'd*, 262 Va. 196 (2001). A trial court is "not obligated to grant [a] request for a continuance based on mere speculation." *Stewart v. Commonwealth*, 10 Va. App. 563, 569 (1990) (concluding that the movant's "assert[ion] that he was prejudiced because the

trial court's ruling prevented him from interviewing a potentially valuable witness who might have been able to discredit [a witness's] identification of him" was mere speculation); *see Mason*, 7 Va. App. at 344 (upholding trial court's denial of a continuance where the appellant's attorney stated that she needed a continuance because she "need[ed] more time to go through it all [the late discovery]"). For "after-discovered evidence . . . [that] could have affected the outcome of the trial," counsel has "the option of locating the [evidence] and filing a motion for a new trial" based on this evidence. *Stewart*, 10 Va. App. at 569.

Here, appellant has not shown how the denial of the continuances prejudiced him. Appellant contends that the continuances would have allowed him to present evidence that was not presented at trial and that such evidence could have changed the outcome. Most of this alleged "evidence," however, is not in the record, and thus, we cannot say that appellant was prejudiced by the denial of his motions for continuance. *See Smith v. Commonwealth*, 16 Va. App. 630, 635 (1993) ("An appellate court must dispose of the case upon the record and cannot base its decision upon appellant's petition or brief, or statements of counsel in open court. We may act only upon facts contained in the record."). This evidence includes "recorded jail calls . . . related to Robinson" that appellant alleges "contain[] statements that were inconsistent with [her] prior sworn testimony." Appellant, however, did not provide the contents of these calls during his motion to set aside the verdict.[3] Thus, we cannot evaluate whether the calls would have served to impeach Robinson on material matters to discredit her testimony. Appellant contends that he needed a continuance to go through Facebook records. He has not, however, pointed to any Facebook records in the record that would have changed the outcome. Regarding appellant's contention that he needed a continuance to complete "pending forensic

---

[3] *See* Rule 3A:15 ("[t]he court must grant a new trial if it sets aside the verdict for any . . . reason [other than] set[ting] aside the verdict because the evidence is insufficient as a matter of law to sustain a conviction").

reports," or to further investigate items of physical evidence, in his motion to set aside the verdict, appellant did not provide the contents of any such completed reports or additional evidence. Thus, we cannot say that their exclusion prejudiced him. Appellant also has not shown how denial of his request for a continuance to have transcripts made prejudiced him—he did not produce any transcripts during his motion to set aside the verdict that could change the outcome and that were not already used at trial. Lastly, appellant was not prejudiced regarding the limited time he had to locate an essential witness because the essential witness testified at trial. Most of appellant's arguments are based on "mere speculation," and thus, appellant has not demonstrated how the denial of his motions for continuance prejudiced him.

In one of the jail calls that was provided in appellant's motion to set aside the verdict, alleged co-conspirator Daniel Farmer "discusses the concept of 'snitching' with [the Commonwealth's witness, Karen] Farmer."

> Ms. Farmer notes that a lot of people are also calling her a snitch, and she justifies her actions by stating, "I was doing what I had to do for my family . . . I didn't snitch on him [appellant] . . . . If you go out and, especially in Virginia, kill somebody . . . you think you ain't gonna get caught?"

Appellant argues that this statement shows that "Ms. Farmer's testimony was hopelessly biased and therefore not credible." The admission of this jail call, however, would not have discredited Ms. Farmer's testimony. In this call, Ms. Farmer does not make any statement that suggests that she was lying in her testimony at trial or make any statement inconsistent with her testimony at trial. Admission of this jail call would not have changed the outcome at trial and thus, its exclusion did not prejudice appellant.

Additionally, in another jail call that was provided in appellant's motion to set aside the verdict, "Daniel Farmer admits to shooting guns at home around Ms. Farmer." Appellant contends that "[t]ying Daniel Farmer to the possession and use of guns could have made it more

likely, in the eyes of the jury, that Daniel Farmer was the actual shooter, rather than [appellant], and if so, then Ms. Farmer's testimony would be completely discredited." The exclusion of this jail call tying Daniel Farmer "to the possession and use of guns" did not prejudice appellant because this evidence would have merely been cumulative. Evidence that Daniel Farmer had a gun and used it was introduced at trial. In cross-examination, Karen Farmer stated that "[her] brother did keep a gun at the house." Appellant also testified that "[he] saw Daniel with a gun maybe one time." Thus, the admission of the jail call tying Daniel Farmer to gun possession/use would not have changed the outcome at trial and so its exclusion did not prejudice appellant.

Because we conclude that appellant failed to demonstrate prejudice from the denial of the continuances, this holding "'renders inconsequential'" "his allegation that the trial court abused its discretion in [not] granting the continuance." *Cooper v. Commonwealth*, 54 Va. App. 558, 566 (2009). "Given our holding, any discussion on that point would conflict with two principles of judicial self-restraint: our reluctance to issue what amounts to an 'advisory opinion' on an inessential subject," and "our corresponding desire to decide the case 'on the best and narrowest ground available.'" *Id.* (quoting *Johnson v. Commonwealth*, 45 Va. App. 113, 117 n.3 (2005)). Thus, we hold that the trial court did not err in denying appellant's motions for continuance.

### B. Denial of Request to Treat Witness as Adverse

Appellant argues that his convictions should be reversed because the trial court erred in denying his request to treat Karen Farmer as an adverse witness under Code § 8.01-401(A).

The appellee argues that at trial, appellant tried to treat Karen Farmer as an adverse witness under Code § 8.01-403, not Code § 8.01-401(A), and thus, appellant's argument is barred by Rule 5A:18 on appeal.

Under Rule 5A:18, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except

for good cause shown or to enable this Court to attain the ends of justice." "Rule 5A:18 applies to bar even constitutional claims." *Perry v. Commonwealth*, 58 Va. App. 655, 673 (2011) (quoting *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004)). To preserve a claim for appeal, a party must state to the trial court the specific legal reasoning for his position. *See id.* (holding appellant's assignment of error that admission of an out-of-court statement violated his Sixth Amendment right to confrontation was barred by Rule 5A:18 because at trial, appellant only objected to admission of the statement on hearsay grounds).

Code § 8.01-403 states:

> A party producing a witness shall not be allowed to impeach his credit by general evidence of bad character, but he may, in case the witness shall in the opinion of the court prove adverse, by leave of the court, prove that he has made at other times a statement inconsistent with his present testimony . . . .

"The term 'adverse,' under this section [Code § 8.01-403], refers to a witness whose testimony is 'injurious or damaging to the case of the party who called the witness.'" *Maxey v. Commonwealth*, 26 Va. App. 514, 519 (1998) (quoting *Ragland v. Commonwealth*, 16 Va. App. 913, 921 (1993)). Under this section, "[a] party's own witness '*prove[s]* adverse' if the witness 'surprise[s] the party by changing stories or becoming hostile *on the stand.*'" *Id.* (emphases and alterations in original) (quoting Charles E. Friend, *Law of Evidence in Virginia* § 4-9, at 147 (4th ed. 1993)).

In contrast, Code § 8.01-401(A) states, "[a] party called to testify for another, having an adverse interest, may be examined by such other party according to the rules applicable to cross-examination." "A witness does not have an 'adverse interest' simply because his or her testimony is adverse or injurious to the calling party's case." *Maxey*, 26 Va. App. at 520. "Rather, an 'adverse witness' is an opposing party or a nonparty witness who has a financial or other personal interest in the outcome of the case." *Id.* (emphasis omitted). "A witness who

- 8 -

has a personal interest in the outcome of the case includes persons who are 'closely connected by blood or otherwise to at least one party . . . .'" *Id.*

Here, this assignment of error is barred by Rule 5A:18 because appellant did not raise the Code § 8.01-401(A) reasoning at trial. In response to the Commonwealth's objection to appellant's request to treat Karen Farmer as an adverse witness, appellant reasoned that "[Karen Farmer's] testimony, when the Commonwealth called her as their witness, has to do with the alleged admission to the shooting that my client allegedly told her in the bathroom. Her interests are adverse [sic] to my client['s] interests." On appeal, appellant argues that Karen Farmer's interests were adverse to his interests under Code § 8.01-401(A) because she is the sister of appellant's alleged co-conspirator. At trial, however, appellant argued that Karen Farmer's testimony made her interests adverse to his—a Code § 8.01-403 argument. Since appellant did not make the Code § 8.01-401(A) argument/objection at trial, this argument is barred by Rule 5A:18. Appellant does not argue the ends of justice exception. Thus, appellant's argument is procedurally barred.

## C. Denial of Ability to Rehabilitate Witness

Appellant argues that his conviction should be reversed because the trial court erred in denying him the ability to rehabilitate his witness. Appellant argues that the trial court erred in prohibiting him from introducing the entire February 19 phone call, which could have rehabilitated Ms. Scott's credibility. Because the Commonwealth used part of the phone call to impeach Ms. Scott, appellant argues that he was entitled to introduce the phone call in its entirety to rehabilitate Ms. Scott's credibility, so the jury could evaluate the impeaching statement in context.

"We review decisions involving the admission of evidence for abuse of discretion by the trial court." *Jones v. Commonwealth*, 50 Va. App. 437, 445 (2007). "If we find an abuse of

discretion, then we must also determine if that error was harmless." *Id.* at 446.  The test for non-constitutional errors, such as the one alleged here, is as follows:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . .  But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . .  If so, or if one is left in grave doubt, the conviction cannot stand.

*Id.* (quoting *Clay v. Commonwealth*, 262 Va. 253, 260 (2001)) (noting that the trial court's exclusion of evidence meant to rehabilitate a witness was non-constitutional error); *see* Code § 8.01-678 ("When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any other defect, imperfection, or omission in the record, or for any error committed on the trial.").  "The Commonwealth bears the burden to prove that the error was harmless." *Jones*, 50 Va. App. at 446.

Assuming, without deciding, that the trial court abused its discretion in excluding the February 19 phone call, we hold that this exclusion was harmless error.  Even if appellant was permitted to introduce the phone call to rehabilitate Ms. Scott's credibility, on cross-examination, the Commonwealth impugned Ms. Scott's credibility in other ways.  On cross-examination, the jury heard that Ms. Scott was very close with her son, the appellant, giving her reason to testify in his favor.  The Commonwealth asked Ms. Scott why she "never told the police after [appellant] was arrested that there must be some mistake," that "[appellant] was with [her] when this [the crime] happened," suggesting Ms. Scott fabricated her current testimony.  Additionally, two other witnesses, Karen Farmer and Lucretia Robinson, testified to appellant's involvement in the crime, and the jury credited either one or both of their testimony

in finding appellant guilty.  Thus, even if the entirety of the February 19 phone call had been admitted, it would have not changed the outcome of the case, so its exclusion was harmless error.

### D.  Limitation of Defense Counsel's Impeachment of Witness

Appellant argues that his conviction should be reversed because the trial court erred in limiting his impeachment of a prosecution witness.  Appellant argues that the trial court erred in preventing his cross-examination of Karen Farmer concerning prior inconsistent statements and in not letting him enter the prior inconsistent statements into evidence.[4]

As discussed above, "[i]f we find an abuse of discretion, then we must also determine if that error was harmless." *Id.*  The test for non-constitutional errors, such as the one alleged here, is also stated above, in section II. C.  *See Dupree v. Commonwealth*, 272 Va. 496, 496-97 (2006) (applying test for non-constitutional errors from *Clay*, 262 Va. at 260, to trial court's refusal to allow a party to impeach a witness with a prior inconsistent statement).

Here, assuming, without deciding, that the trial court abused its discretion in limiting appellant's impeachment of Karen Farmer and excluding her prior inconsistent statements, we hold that these actions did not prejudice appellant.  Even if appellant had successfully impeached Karen Farmer, Lucretia Robinson's testimony still connected appellant to the crime.  Thus, the trial court's actions limiting appellant's impeachment of Ms. Farmer and excluding Ms. Farmer's prior inconsistent statements would not have changed the outcome of the case and did not prejudice appellant.

---

[4] Appellant also argues that he did not have a chance to object to the introduction of Commonwealth's Exhibit 58.  This exhibit, however, is one of Karen Farmer's prior inconsistent statements that appellant argues should have been admitted.  "[N]o litigant . . . will be permitted to approbate and reprobate—to invite error . . . and then to take advantage of the situation created by his own wrong."  *Garlock Sealing Techs., LLC v. Little*, 270 Va. 381, 388 (2005) (alterations in original) (quoting *Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 367 (2003)).  Thus, we do not address this argument.

E. *Brady* Violation

Appellant argues that his conviction should be reversed because the Commonwealth committed a *Brady* violation[5] when it "failed to provide exculpatory discovery" to appellant. Appellant contends that certain interviews exist and were not disclosed to him. These interviews include interviews between: Karen Farmer and a detective; the Commonwealth and the victim's mother; and the Commonwealth and the victim's father.[6] He argues that the interviews could have been used to impeach/cross-examine these witnesses. Appellant also alleges that "[i]t was the Commonwealth's responsibility under *Brady* to have [a] visor [and eyeglasses belonging to the victim] analyzed for DNA and fingerprints."

"A violation of the *Brady* rule occurs when (1) 'the prosecution . . . suppressed the evidence, either purposefully or inadvertently;' (2) the evidence in question is 'favorable to the accused' because it is exculpatory evidence or impeachment evidence; and (3) the evidence is 'material.'" *Warnick v. Commonwealth*, 72 Va. App. 251, 268 (2020) (quoting *Church v. Commonwealth*, 71 Va. App. 107, 117 (2019)). "The accused has the burden of establishing each of these three components to prevail on a *Brady* claim." *Commonwealth v. Tuma*, 285 Va. 629, 635 (2013). "The third requirement, materiality, is satisfied when 'there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.'" *Warnick*, 72 Va. App. at 268 (quoting *Church*, 71 Va. App. at 117).

"*Brady* is 'a disclosure rule, *not a discovery rule*.'" *Tuma*, 285 Va. at 635 (emphasis added) (quoting *United States v. Higgins*, 75 F.3d 332, 335 (7th Cir. 1996)). "[T]here is no

---

[5] *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("hold[ing] that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

[6] Appellee states that these additional interviews with the victim's parents "may or may not have existed."

general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Id.* (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)). "The more limited purpose of the *Brady* rule is 'to assure that [the defendant] will *not be denied access* to exculpatory [or impeachment] evidence *known to the government but unknown to him*.'" *Id.* (alterations and emphases in original) (quoting *Lugo v. Munoz*, 682 F.2d 7, 10 (1st Cir. 1982)).

Here, there is no *Brady* violation. Appellant has not made the interviews he references part of the appellate record, shown how these interviews would be favorable to him, or shown how this evidence would have changed the result of the trial. Thus, appellant has not proven the third requirement for a *Brady* violation. These interviews are not "known to the government," as the appellee states it is unsure whether these interviews exist. *Brady* is not a rule of discovery, and the Commonwealth has no obligation to turn over interviews of which it has no knowledge. Additionally, the general definition of a *Brady* violation does not require the Commonwealth to have all physical evidence collected and analyzed for potentially exculpatory DNA evidence, nor does appellant cite any authority for such a requirement. Thus, we hold that there was no *Brady* violation.

## F. Sufficiency of the Evidence

Finally, appellant argues that his convictions should be reversed because the trial court erred in denying his motions to strike the evidence as insufficient.

"A motion to strike challenges whether the evidence is sufficient to submit the case to the jury." *Lawlor v. Commonwealth*, 285 Va. 187, 223 (2013). Determining "the elements of [an] offense . . . is a question of law that we review de novo." *Id.* "Whether the evidence adduced is sufficient to prove each of those elements is a factual finding, which will not be set aside on appeal unless it is plainly wrong." *Id.* at 223-24. "In reviewing that factual finding, we consider the evidence in the light most favorable to the Commonwealth and give it the benefit of all

reasonable inferences fairly deducible therefrom." *Id.* at 224. "When considering the sufficiency of the evidence on appeal, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Charity v. Commonwealth*, 49 Va. App. 581, 585 (2007) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)).

Appellant argues that the elements of conspiracy to commit robbery are not met. He asserts that there is no evidence showing he "had an agreement with an individual to rob anyone" and there is "no evidence the victim had been robbed of anything." "Conspiracy requires a shared intent and joint action . . . ." *Charity*, 49 Va. App. at 585-86. "Conspiracy requires . . . (1) an agreement between two or more persons, which constitutes the act; and (2) an intent thereby to achieve a certain objective[,] either an unlawful act or a lawful act by unlawful means." *Id.* at 586 (alterations in original) (quoting *Hix v. Commonwealth*, 270 Va. 335, 347 (2005)). "[T]he crime of conspiracy is complete when the parties agree to commit an offense. . . . No overt act in furtherance of the underlying crime is necessary." *Id.* (second alteration in original) (quoting *Gray v. Commonwealth*, 260 Va. 675, 680 (2000)). "[A] conspiracy may be inferred by actions alone." *Id.* at 587.

> [W]hen "it has been shown that the defendants 'by their acts pursued the same object, one performing one part and the others performing another part so as to complete it or with a view to its attainment, the jury will be justified in concluding that they were engaged in a conspiracy to effect that object.'"

*Id.* at 586 (quoting *Brown v. Commonwealth*, 10 Va. App. 73, 78 (1990)).

The underlying crime that appellant allegedly conspired to commit is robbery. "Robbery, a common law offense in Virginia, is defined as the 'taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or

intimidation.'" *Spencer v. Commonwealth*, 42 Va. App. 443, 448 (2004) (emphasis omitted) (quoting *Jones v. Commonwealth*, 26 Va. App. 736, 738 (1998)). Thus, in order to prove that a conspiracy existed in this case, the evidence must show that appellant formed an agreement and possessed the requisite intent to steal the personal property of another, from his person or in his presence, against his will, by violence or intimidation. *See Charity*, 49 Va. App. at 586 ("[I]n order to prove that a conspiracy existed in this case, the evidence must show that appellant formed an agreement and possessed the requisite intent to escape from the correctional facility in violation of Code § 53.1-203.").

Here, the evidence shows, beyond a reasonable doubt, that appellant made an agreement to and possessed the intent to steal the personal property of the victim, from his person or in his presence, against his will, by violence or intimidation. Karen Farmer testified that Daniel Farmer spoke of his plan to rob the victim, Lincoln Williams, Jr., a few days before the plan was carried out. Daniel Farmer and appellant both drove to the victim's house to commit the robbery. When at the victim's house, appellant pointed a gun at the victim and told the victim to give him drugs or money. Just because the robbery was unsuccessful, and it appears nothing was taken from the victim's person, does not mean that appellant did not have the intent to commit robbery. These actions show that appellant had the intent to steal the victim's personal property from the victim's person, and in using a gun, meant to do so by violence or intimidation. Appellant's actions that he took in accordance with Daniel Farmer's plan show that he and Daniel Farmer formed an agreement to commit the robbery. Thus, the evidence is sufficient, beyond a reasonable doubt, to meet the elements of conspiracy to commit robbery.

Regarding the crimes of first-degree murder and use of a firearm in commission of a felony, appellant does not argue that the elements of these crimes, when viewing the evidence in the light most favorable to the Commonwealth, are not met as a matter of law. Rather, appellant

argues that the testimony of Karen Farmer and Lucretia Robinson should not be believed. He argues that the only evidence connecting him to the crimes are these two testimonies, no physical evidence (DNA, fingerprints, a weapon) connects him to the crimes, and the victim stated that Daniel Farmer committed the crimes. "Traditional principles dictate, both in the civil and criminal law, that the determination of a witness' credibility is within the fact finder's exclusive purview because he has the best opportunity to observe the appearance and demeanor of the witness." *Goodyear Tire & Rubber Co. v. Pierce*, 5 Va. App. 374, 381 (1987). Thus, the jury was in the best position to determine these witnesses' credibility and we will not disturb these determinations on appeal. In convicting appellant, the jury found Karen Farmer's and Lucretia Robinson's testimony to be credible.

When viewing the evidence in the light most favorable to the Commonwealth, the elements of both first-degree murder and use of a firearm in commission of a robbery are met.

"Murder is the unlawful killing of another with malice." *Osman v. Osman*, 285 Va. 384, 391 (2013). "Malice, in a legal sense, means any wrongful act done willfully or purposely." *Id.* First-degree murder is "[m]urder . . . in the commission of, or attempt to commit . . . robbery." Code § 18.2-32.

Here, the elements of first-degree murder are met. There is no dispute that the victim was willfully killed by a single gunshot wound and that this killing was unlawful. According to Karen Farmer's testimony, it was appellant who shot and killed the victim, while attempting to rob the victim. Additionally, Lucretia Robinson testified that she had heard that Daniel Farmer planned to rob someone. Daniel Farmer, appellant, and Robinson drove to the victim's house. Appellant took a gun with him when he exited the car. Robinson heard a gunshot while appellant was gone, and when appellant returned, he said, "if he hadn't have fought back [I] wouldn't have had to pop him." Based on these testimonies, the jury could have found, beyond a

reasonable doubt, that appellant committed first-degree murder by murdering the victim while attempting to rob the victim.

Under Code § 18.2-53.1, "[i]t shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit . . . robbery."

Here, the elements of use or display of a firearm in commission of a felony are met. According to Karen Farmer's testimony, appellant approached the victim, took out a gun, and told the victim to give him drugs or money. Additionally, as stated above, Lucretia Robinson testified that when she and appellant arrived at the victim's house, appellant took a gun with him when he exited the car. Robinson heard a gunshot while appellant was gone, and when appellant returned, he said, "if he hadn't have fought back [I] wouldn't have had to pop him." From this evidence, the jury could conclude beyond a reasonable doubt that appellant used or displayed a gun while attempting to rob the victim.

Because the evidence is sufficient to convict appellant of first-degree murder, conspiracy to commit robbery, and use or display of a firearm in committing a felony, the trial court did not err in denying appellant's motions to strike.

### III. CONCLUSION

For the reasons above, we hold that the trial court committed no reversible error and affirm the appellant's convictions.

*Affirmed.*