COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Friedman, Callins and White
Argued by videoconference


JZHAREY LEQUANTE JONES

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0586-22-3                  JUDGE FRANK K. FRIEDMAN
                                                        MAY 16, 2023

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                              Stacey W. Moreau, Judge

            Carlos A. Hutcherson for appellant.

            Ken J. Baldassari, Assistant Attorney General (Jason S. Miyares,
            Attorney General, on brief), for appellee.


        Following a bench trial, the trial court convicted Jzharey Lequante Jones of strangulation

and domestic assault and battery.[1]  Jones contends that the trial court erred in denying his motions to

set aside the verdict and award him a new trial because the trial court should have allowed him to

use prior inconsistent statements to impeach the victim as an adverse witness at trial.  In addition,

Jones argues that the evidence was insufficient to convict him of strangulation and domestic assault

and battery.  For the following reasons, we affirm the trial court's judgment.

                                        BACKGROUND

        Olivia Overstreet and Jones have a child together.  On June 14, 2021, Overstreet and her

child spent the night at Jones's house.  During an argument while in bed, Jones "got physical"

with Overstreet and began to choke her.  Jones got "over top of [her]" on the bed and "choked

---

* This opinion is not designated for publication.  *See* Code § 17.1-413.

[1] The trial court acquitted Jones of a related charge of abduction.  Jones did not appeal his
conviction, upon his guilty plea, for property damage arising from the same incident.

[her] with both hands" around her neck. Overstreet could not breathe and "felt like [she] was going to pass out." When Jones eventually "stopped" choking her, Overstreet had no "visible injuries" on her neck but it felt "kind of sore." After the attack, she and Jones "made up" and went to sleep.

The next morning, Jones became upset and threw a plastic baby bottle at Overstreet's eye, which began to swell. Jones then took Overstreet's car keys, placed them on a dresser, and told her that she "was not leaving." Overstreet grabbed the keys when Jones left the room; when he returned, Overstreet refused to watch a movie with him and went into the living room with their child.

Fearing that Jones would prevent her from leaving, Overstreet snuck out the back door with her child and got into her car. Jones came outside and tried to enter her car, but she locked the doors. Standing in front of her car, Jones cracked the windshield with a rock. As Overstreet drove away, Jones threw another rock at the driver's side window, shattering the glass. The glass shards cut their child.

After the incident, Overstreet saw a nurse for treatment but left because she "didn't want to be there." Overstreet also reported the incident to police and filed a written complaint at the magistrate's office.

At trial, during the Commonwealth's case-in-chief, Jones cross-examined Overstreet about the incident[2] but did not ask whether she had made any prior statements that were inconsistent with her trial testimony.

After the Commonwealth rested, Jones called Overstreet as a defense witness. During Overstreet's direct examination, the Commonwealth objected to Jones asking Overstreet to

_____

[2] During cross-examination while testifying as the Commonwealth's witness, Overstreet stated that Jones "didn't prevent [her] from leaving" during the incident.

- 2 -

authenticate her written complaint to the magistrate, asserting that Jones was improperly attempting to impeach his own witness with a prior inconsistent statement. The trial court allowed Jones to continue examining Overstreet, but cautioned, "You can't impeach your own witness. It would have been different when [Overstreet] was on the stand previously but now she's your witness." Overstreet authenticated the complaint, and Jones again attempted to introduce it into evidence. The trial court excluded the exhibit, ruling that the complaint was irrelevant except to impeach Overstreet.

Jones moved the trial court to declare a mistrial. He argued that he did not seek to introduce Overstreet's complaint to impeach her and the trial court was preventing him from "present[ing] a defense." The trial court ruled that the complaint was irrelevant, and it denied the motion for mistrial.

Resuming direct examination, Jones asked Overstreet a series of questions concerning whether she made prior inconsistent statements or omissions to police or the magistrate regarding the incident.[3] The trial court sustained the Commonwealth's objection to each question on the same grounds as it previously ruled.[4] The trial court also refused Jones's request to "deem [Overstreet] to be adverse based upon answers to questions at this time."[5]

---

[3] Jones also asked Overstreet whether her prior statements had been "consistent" with her testimony.

[4] After the trial concluded, Jones proffered that Overstreet's anticipated responses to his questions would have established that she provided prior inconsistent statements to police, including that "there was no soreness the next day to her throat," "no injuries," and that Overstreet did not allege that Jones strangled her "the first or the second time she made a report." Rather, the first time Jones disclosed being strangled was after she noticed a photograph of herself posted "on social media later that day." The Commonwealth did not dispute the proffer.

[5] At trial, Jones argued that Overstreet had proven adverse because when he examined her, she claimed not to recall whether she told police that her throat was not sore; but "when the Commonwealth asks . . . [Overstreet] recalls."

Harold Jones, Jr. (Harold), Jones's uncle, testified that he lived with Jones and did not hear "any noises" on the night of the incident "as if there were a confrontation or some tussling going on." Harold was unaware that Overstreet was in the residence, and he did not enter Jones's bedroom during the assault.

Testifying on his own behalf, Jones denied strangling Overstreet or throwing the baby bottle at her. Jones admitted that he threw rocks at Overstreet's car, but maintained that he did so because "she almost hit [him] with the car."

During closing argument, Jones contended that the evidence failed to prove that he strangled Overstreet because his testimony contradicted Overstreet's and no physical evidence corroborated her alleged injuries. The trial court found Jones guilty of strangulation and domestic assault and battery.

Jones moved the trial court to set aside the verdict and award him a new trial. Jones asserted that the trial court erred in denying his motion for mistrial because it should have permitted him to impeach Overstreet as an adverse witness using prior inconsistent statements. He also argued that the evidence was insufficient to sustain his convictions. The trial court found that Jones "chose not to cross-examine" Overstreet during the Commonwealth's case-in-chief, "and then chose to call" her as his own witness "for the sole purpose of impeachment." In addition, the trial court found that Overstreet "was not proven to be adverse." Finally, the trial court ruled that the evidence was sufficient to prove strangulation and domestic assault and battery. Accordingly, it denied the motion to set aside the verdict and award a new trial. Jones appeals.

ANALYSIS

I.

Jones argues that the trial court erred in denying his motion to set aside the verdict and grant a new trial because the trial court refused to allow him to impeach Overstreet as an adverse witness using her prior inconsistent statements. Jones contends that Overstreet "proved adverse" because "her story related to whether she suffered any injuries from the alleged choking changed from her prior statements of there being 'no injury.'" In addition, he asserts that Overstreet was "an adverse witness" because "she was an opposing party and had a personal interest in the outcome of the case." Finally, Jones argues that because "Overstreet's testimony substantiated" his claim that he did not abduct her, Jones did not call Overstreet as a witness solely to impeach her. We disagree.

Appellate courts review a trial court's ruling denying a motion to set aside the verdict or a motion for new trial for abuse of discretion. *Gross v. Stuart*, 297 Va. 769, 774 (2019). "[T]he determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion." *Johnson v. Commonwealth*, 70 Va. App. 45, 49 (2019) (quoting *Henderson v. Commonwealth*, 285 Va. 318, 329 (2013)). When evaluating whether a trial court has abused its discretion, this Court does not substitute its judgment for that of the trial court. Rather, this Court considers "only whether the record fairly supports the trial court's action." *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009) (quoting *Beck v. Commonwealth*, 253 Va. 373, 385 (1997)). An abuse of discretion occurs only when reasonable jurists could not differ. *Wynnycky v. Kozel*, 71 Va. App. 177, 193 (2019). "[B]y definition," however, a trial court "abuses its discretion when it makes an error of law." *Coffman v. Commonwealth*, 67 Va. App. 163, 166 (2017) (quoting *Commonwealth v. Greer*, 63 Va. App. 561, 568 (2014)).

"As a general rule at common law, a party was not allowed to impeach its own witness." *Maxey v. Commonwealth*, 26 Va. App. 514, 518 (1998). "A party calling a witness was considered to have vouched for the witness' credibility and was not allowed to prove that the witness was unworthy of belief, even if the witness spoke against the party in some respects." *Id.*

Nonetheless, "Virginia has enacted two statutes that impact the common law rule." *Id.* "Code § 8.01-403 permits the impeachment of a witness who 'proves adverse,'" meaning "a witness whose testimony is 'injurious or damaging to the case of the party who called the witness.'" *Id.* (quoting *Ragland v. Commonwealth*, 16 Va. App. 913, 920 (1990)). "Code § 8.01-403 allows a party to impeach his or her own witness by prior inconsistent statements only when the witness whom the party expected to testify favorably has suddenly given unexpected, adverse testimony on the stand." *Id.* at 519-20. By contrast, Code § 8.01-401(A) allows such impeachment of a witness "having an adverse interest"—*i.e.*, an "opposing party or a nonparty witness who has a financial or *other personal interest* in the outcome of the case." *Id.* at 520 (citing Charles E. Friend, *Law of Evidence in Virginia* § 4-9, at 149-50 (4th ed. 1993); *Daniels v. Morris*, 199 Va. 205, 211 (1957); *Butler v. Parrocha*, 186 Va. 426, 431 (1947)). But even if a witness has proven adverse or has an adverse interest, a party may not call that witness "solely for the purpose of impeaching her with her prior statements." *Id.* at 521 (emphasis omitted).

The record here supports the trial court's finding that Jones called Overstreet solely to impeach her. At trial, Jones had the opportunity to cross-examine Overstreet during the Commonwealth's case concerning any prior inconsistent statements she may have made, but chose not to do so. Jones then called Overstreet as his own witness and repeatedly attempted to question her about such prior inconsistent statements. The trial court properly sustained the

Commonwealth's objections to Jones's questions concerning Overstreet's prior statements. Indeed, that Jones explicitly asked Overstreet whether her prior statements were "consistent" with her testimony belies his assertion[6] that he did not call her "solely for the purpose of impeaching her with her prior statements." *Id.* (emphasis omitted). Thus, regardless of whether Overstreet was "adverse" under Code § 8.01-401(A) or Code § 8.01-403, the trial court rationally concluded that Jones called her solely to impeach her; therefore, the trial court did not err in excluding her testimony about her prior statements. *Maxey*, 26 Va. App. at 521.

Furthermore, Jones was not surprised that Overstreet, when he called her to the stand as his own witness, testified unfavorably to him about some aspects of the night of the strangulation and morning of the assault. In fact, Jones could not claim such surprise, as Overstreet previously testified as a Commonwealth's witness that he had strangled her and thrown a bottle at her face. *Id.* at 519-20. Accordingly, Overstreet did not "prove adverse" within the meaning of Code § 8.01-403 and Jones could not impeach her with her prior statements under that section.

Finally, to the extent Jones argues specifically that Overstreet had an "adverse interest" as stated in Code § 8.01-401(A), Rule 5A:18 forecloses our review because he did not raise this issue until his motion to set aside the verdict. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). "Specificity

---

[6] In his brief, Jones asserts that "Overstreet's testimony substantiated" his testimony "that there was no abduction," thereby proving that he did not call her for "the sole purpose of impeaching her testimony." Jones overlooks that although Overstreet testified that Jones "didn't prevent [her] from leaving," she did so during cross-examination as *the Commonwealth's witness*, not as a defense witness.

and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both specific and timely — so that the trial judge would know the particular point being made in time to do something about it." *Id.* (emphasis omitted) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). If a party fails to timely and specifically object, he waives his argument on appeal. *Arrington v. Commonwealth*, 53 Va. App. 635, 641 (2009).

Jones failed to preserve this aspect of his argument for appellate review because he did not raise it during trial, when the trial court could have considered it and taken corrective action if warranted. *See id.* Jones does not invoke the good cause or ends of justice exceptions to Rule 5A:18, and this Court will not do so *sua sponte*. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (*en banc*). Consequently, we do not consider this question on appeal.

II.

Jones argues that the evidence was insufficient to prove strangulation or domestic assault and battery.[7] First, Jones asserts that Overstreet's testimony was not credible and lacked corroboration.[8] Jones also asserts that her "story changed" multiple times.

Code § 18.2-51.6 provides that "[a]ny person who, without consent, impedes the blood circulation or respiration of another person by knowingly, intentionally, and unlawfully applying pressure to the neck of such person resulting in the wounding or bodily injury of such person is

---

[7] The Commonwealth asserts that Jones's failure to comply with Rule 5A:20(e) requires dismissal of this claim. *See Fadness v. Fadness*, 52 Va. App. 833, 851 (2008). The doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available. *See Commonwealth v. White*, 293 Va. 411, 419 (2017). Here, assuming without deciding the claim is preserved, we hold that the evidence is sufficient to uphold the convictions.

[8] In challenging the domestic assault and battery, Jones simply incorporates by reference his arguments made challenging his strangulation conviction.

- 8 -

guilty of strangulation." Code § 18.2-57.2 criminalizes assault and battery committed against a family or household member, as defined in Code § 16.1-228.[9]

Notably, Jones does not contend that Overstreet's testimony was inherently incredible. Weighing witness credibility "is within the exclusive province of the [factfinder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). Moreover, "the trier of fact is free to believe or disbelieve, in whole or in part, the testimony of any witness." *Rams v. Commonwealth*, 70 Va. App. 12, 38 (2019) (citing *Carosi v. Commonwealth*, 280 Va. 545, 554-55 (2010)).

"Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019). "Consequently, . . . '[p]otential inconsistencies in testimony are resolved by the fact finder,' not the appellate court." *Id.*[10] (second alteration in original)

Jones's argument further ignores that the sufficiency of the evidence on appeal is reviewed "in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom" and "discard[ing] the evidence of the accused in conflict with that of the Commonwealth." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (*en*

---

[9] A "family or household member" includes "any individual who has a child in common with the person, whether or not the person and that individual have been married or have resided together at any time." Code § 16.1-228.

[10] Similarly, a lack of corroboration is not a barrier to conviction in this instance either. "Domestic violence, like rape and other sexual offenses, often occurs outside the presence of witnesses 'except the perpetrator and the victim.'" *Wilson v. Commonwealth*, 46 Va. App. 73, 88 (2005).

*banc*) (first quoting *Bright v. Commonwealth*, 4 Va. App. 248, 250 (1987); and then quoting

*Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).[11]

Here, the Commonwealth put on ample evidence to support the conviction—and the

factfinder clearly credited it. The Supreme Court of Virginia has held that:

> "[B]odily injury" within the scope of Code § 18.2-51.6 is any
> bodily injury whatsoever and includes an act of damage or harm or
> hurt that relates to the body; is an impairment of a function of a
> bodily member, organ, or mental faculty; or is an act of
> impairment of a physical condition.

*Ricks v. Commonwealth*, 290 Va. 470, 479 (2015). "To prove a bodily injury, the victim need

not experience any observable wounds, cuts, or breaking of the skin. Nor must she offer proof of

'broken bones or bruises.'" *Id.* at 478. Indeed, "the term bodily injury includes internal

injuries." *Commonwealth v. Perkins*, 295 Va. 323, 328 (2018).

Overstreet testified that Jones "choked [her] with both hands" around her neck. She

could not breathe while Jones choked her and that afterwards, her neck was "kind of sore."

Although she did not have "visible injuries" to her neck, Overstreet testified that after being

choked, she had soreness when she was breathing, soreness when she was talking, and soreness

when she was eating and drinking.

The trial court did not err when it rejected Jones's challenge to the sufficiency of the

evidence. The circuit court's ruling is amply supported by the record.

---

[11] Additionally, Jones testified in his own defense and the trial court, sitting as factfinder, "is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018). Indeed, "[t]he credibility of witnesses and the weight accorded their testimony are matters solely for the fact finder who has the opportunity of seeing and hearing the witnesses." *Commonwealth v. Jackson*, 276 Va. 184, 197 (2008) (quoting *Schneider v. Commonwealth*, 230 Va. 379, 382 (1985)).

CONCLUSION

For the above reasons, we affirm the trial court's judgment.

*Affirmed.*